HERBOLSHEIMER v SMS HOLDING COMPANY, INC

Docket No. 204631. Submitted March 9, 1999, at Lansing. Decided January 4, 2000, at 9:05 A.M. Leave to appeal sought.

Royce S. Herbolsheimer died from injuries suffered on the job at Saginaw Machine Systems, Inc. (SMS), when a piece of metal flew off a turning machine he was operating, broke through a viewing window, and hit him in the head. Before the decedent was hired, SMS Holding Company, Inc., the sole shareholder of SMS, had acquired the machine when it bought all the shares of Wickes Machine Tool Group, Inc. (WMTG). WMTG had been formed by Wickes Corporation, one of whose divisions, Saginaw Machine and Tool Division (SMT), had modified the viewing window of the machine after the manufacturer of the machine sold the machine to SMT. Jenee S. Herbolsheimer, as personal representative of the estate of the decedent, brought an action in the Saginaw Circuit Court against SMS and SMS Holding Company, Inc., alleging negligence by SMT with respect to the modification of the machine's viewing window and liability by the defendants, as successors of SMT who assumed the liabilities of SMT, for such negligence. The defendants moved for summary disposition, arguing that the action is barred by the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131). The plaintiff argued that the exclusive remedy provision does not apply because under the dual-persona doctrine, the defendants, as successors to the liability of SMT, have a status other than employer and are liable as third-party tortfeasors. The court, Patrick J. Meter, J., denied the defendants' motion. The defendants appealed by leave granted.

The Court of Appeals held:

1. The judicially created dual-persona doctrine, which allows a suit for a nonintentional tort against an employer in addition to worker's compensation, applies only in those situations in which the employer has a second identity that is completely distinct and removed from the status of employer. The second identity must generate obligations on the part of the employer that are unrelated to the status of employer. This exception to the exclusive remedy of worker's compensation exists only where the employer-employee relationship is entirely unrelated to, or only incidentally involved with, the cause of action. In this case, the dual-persona

doctrine does not apply because there was no clear legal obligation on the part of SMT that could form the basis of a separate persona for SMS as the successor in liability to SMT. The only obligation implicated by the modification of the machine for SMT's own use was the obligation to provide a safe workplace for employees of SMT, which is an obligation completely covered by the worker's compensation act. It is clear that but for the decedent's employment and job capacity with SMS, the accident would not have happened. Thus, the employer-employee relationship is not entirely unrelated to, or incidentally involved with, the cause of action. Benefits under the worker's compensation act are the plaintiff's only remedy.

2. SMS Holding Company, Inc., cannot be liable in the absence of liability by SMS.

Reversed.

HOEKSTRA, J., dissenting, stated that stare decisis does not permit the Court of Appeals to unilaterally curtail the dual-persona doctrine, which has been unequivocally adopted by the Michigan Supreme Court as applying to the situation presented by this case.

WORKER'S COMPENSATION — EMPLOYERS — DUAL PERSONA — THIRD-PARTY LIABILITY FOR NONINTENTIONAL TORTS.

The dual-persona doctrine, a judicially created exception to the statutory and exclusive remedy of worker's compensation for work-related injury, allows an employee to sue an employer as a third-party nonintentional tortfeasor in addition to receiving worker's compensation only in those situations in which the employer has a second identity that is completely distinct and removed from the status of employer and that generates obligations on the part of the employer that are unrelated to the status of employer (MCL 418.131, 418.827; MSA 17.237[131], 17.237[827]).

*Grimaldi, Vary, Pearson & Weyand, P.C.* (by *William S. Pearson* and *Karl J. Weyand, Jr.*), for Jenee S. Herbolsheimer.

*Williams, Williams, Ruby & Plunkett, P.C.* (by *John W. Griffen, Jr.*, and *Jennifer M. Chapla*), for SMS Holding Company, Inc., and Saginaw Machine Systems, Inc.

Amicus Curiae:

*Clark Hill P.L.C.* (by *Duane L. Tarnacki* and *J. Walker Henry*), for Michigan Manufacturers Association.

Before: Markman, P.J., and Hoekstra and Zahra, JJ.

Markman, P.J. This case presents a question of first impression in Michigan. We are asked to decide whether an employee can sue his employer—as a successor in liability—in a third-party lawsuit under Michigan's Worker's Disability Compensation Act (WDCA). We are also asked to consider whether plaintiff can bring her suit against a company that holds all the stock in the employer company. The trial court denied defendants' motion for summary disposition with respect to both of these issues, and we granted defendants leave to bring this appeal.[1] We reverse.

The parties agree on the essential facts. Royce Herbolsheimer, the decedent, worked for Saginaw Machine Systems, Inc. (SMS), where he operated a turning machine, a tool that turns metal at high speeds. Tragically, while Herbolsheimer was operating the machine in 1992, a piece of metal flew off the machine and broke through a viewing window in the machine's door, hitting him in the head and eventually killing him. Herbolsheimer's family collected worker's disability compensation survivor benefits under the WDCA from SMS, and plaintiff, the personal representative of Herbolsheimer's estate then attempted to sue the manufacturer of the machine, alleging that the window was negligently designed. However, during discovery, plaintiff learned that the machine had orig-

---

[1] The suit against Collins & Aikman Products Company was dismissed and is not part of this appeal.

inally been designed with three small, reinforced safety windows, not a single larger window. Because plaintiff believed that the window would not have broken but for the modification, she also sought to sue the party that modified the window.

The company that manufactured the machine sold it to the Saginaw Machine and Tool Division of the Wickes Corporation (SMT), the company that plaintiff alleges made the negligent modification. Wickes then combined SMT with several other divisions to create the Wickes Machine Tool Group Division. Later, Wickes formed the Wickes Machine Tool Group, Inc. (WMTG), and transferred all the division's assets to the new corporation. Sometime later, SMS Holding Company, Inc. (the holding company), purchased all of WMTG's stock from Wickes under a stock purchase agreement. The holding company then changed the corporation's name from WMTG to SMS. The holding company is thus the sole shareholder/parent corporation of SMS. Defendant SMS concedes that it is the successor in liability to the original corporation that purchased and modified the machine. It is also the company that later hired the decedent.

In the court below, plaintiff filed suit against SMS and the holding company on the theory that they are the corporate successors to the entity that modified the machine, and that the dual-capacity doctrine overcomes the exclusive remedy provision of the WDCA, MCL 418.131; MSA 17.237(131). SMS and the holding company brought a motion for summary disposition. They claimed that plaintiff was legally barred from bringing the suit by the exclusive remedy provision of the WDCA. The trial court issued an opinion and order denying defendants' motion. The trial court then also

denied defendants' motion for reconsideration. This Court granted leave to appeal.

We review questions regarding the exclusive remedy provision of the WDCA pursuant to MCR 2.116(C)(4) to determine whether the circuit court lacked subject-matter jurisdiction because the plaintiff's claim was barred by the provision. *James v Commercial Carriers, Inc,* 230 Mich App 533, 536; 583 NW2d 913 (1998); *Bitar v Wakim,* 211 Mich App 617, 619; 536 NW2d 583 (1995), rev'd on other grounds 456 Mich 428; 572 NW2d 191 (1998). We review decisions on motions for summary disposition under MCR 2.116(C)(4) de novo to determine if the moving party was entitled to judgment as a matter of law, or whether the affidavits and other proofs show that there was no genuine issue of material fact. MCR 2.116(I)(1); *Faulkner v Flowers,* 206 Mich App 562, 564; 522 NW2d 700 (1994).

The WDCA substitutes statutory compensation for "common-law tort liability founded upon an employer's negligence in failing to maintain a safe working environment." *Mathis v Interstate Motor Freight System,* 408 Mich 164, 179; 289 NW2d 708 (1980); *Clark v United Technologies Automotive, Inc,* 459 Mich 681, 686; 594 NW2d 447 (1999). Under the WDCA, employers provide compensation to employees for injuries suffered in the course of employment, regardless of fault. *Clark, supra* at 686-687; MCL 418.301; MSA 17.237(301). "In return for this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer." *Clark, supra* at 687; MCL 418.131; MSA 17.237(131). This

rule is embodied in the exclusive remedy provision, MCL 418.131; MSA 17.237(131), which provides in pertinent part:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort.

By its terms, the exclusive remedy provision limits the liability of the "employer." Thus, if a defendant is found to be the plaintiff's employer, the plaintiff is limited to worker's compensation benefits and may not sue the employer independently.

However, in cases where the injury is due to a third party's negligence, a plaintiff can collect worker's compensation benefits and sue the third party. MCL 418.827; MSA 17.237(827). Michigan courts have recognized that in very limited circumstances an employer can have additional relationships with its employees that extend beyond, or are in addition to, the customary employer-employee relationship. This separate relationship may provide the grounds for a suit against an "employer" in addition to worker's compensation benefits. The parties in this case frame their arguments with regard to a separate relationship in terms of the dual-capacity doctrine.[2] The Supreme

---

[2] This court has historically struggled with the concept of dual capacity. Compare *Handley v Wyandotte Chemical Corp*, 118 Mich App 423, 429; 325 NW2d 447 (1982), and *Peoples v Chrysler*, 98 Mich App 277, 281-282; 296 NW3d 237 (1980) (finding that an employee cannot maintain a separate cause of action against his employer unless the employer-employee relationship is entirely unrelated or only incidentally related to the cause of action), with *Robards v Estate of Kantzler*, 98 Mich App 414; 296 NW2d 265 (1980) (allowing a tort claim against an employer arising out of a work site injury where the employee identified obligations owed by the

Court has twice recognized this doctrine, at least in some form. *Howard v White*, 447 Mich 395, 398; 523 NW2d 220 (1994); *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 653; 364 NW2d 670 (1984).[3] In both *Wells* and *Howard*, the Supreme Court recognized the dual-capacity exception to the WDCA. In both cases, however, the Supreme Court declined to apply the dual-capacity doctrine and found instead that the exclusive remedy provision of the WDCA barred the employee's suit against the employer.

Perhaps because the dual-capacity doctrine was not applied in either *Wells* or *Howard*, the doctrine as adopted in Michigan has not been defined with ideal clarity. There appears to be some confusion in the case law over whether Michigan recognizes the dual-capacity doctrine or the dual-persona doctrine. The difference in terminology marks the degree to which the additional relationship must be distinct from the employer-employee relationship. Stated more precisely, the dual-persona doctrine requires that any additional relationships between the employer and the employee be more distinct than simply an additional capacity on the part of the former. According to 6 Larson, Workers' Compensation Law, § 113.01[1],

---

employer to the employee that were unrelated to obligations owed in the employer/employee relationship). While this Court has more often than not rejected dual-capacity claims and upheld the exclusive remedy provision of the Worker's Disability Compensation Act, see *Wells v Firestone Tire & Rubber Co*, 421 Mich 641, 652, n 4; 364 NW2d 670 (1984), we have failed to provide clarity in addressing this exception to the WDCA.

[3] In *Wells*, the plaintiff was employed by a wholly owned subsidiary of the defendant. In the course of his employment the plaintiff was changing a tire on a truck wheel rim manufactured by the defendant. The rim blew apart, severely injuring the plaintiff. The plaintiff alleged that the defendant functioned in a capacity separate and distinct from the defendant's capacity as the plaintiff's employer. The Supreme Court rejected "this attempt to apply the so-called 'dual-capacity doctrine.' " *Id.* at 652.

p 113-2, the dual-persona doctrine requires that the employer possess "a second persona so completely independent from and unrelated to its status as employer that by established standards the law recognizes that persona as a separate legal person."[4]

In *Howard, supra* at 398, the Supreme Court stated that the "dual-capacity doctrine is recognized in Michigan." However, in defining this doctrine, the Court adopted a definition more consistent with the concept of dual persona. The Supreme Court stated:

> Since the term "dual capacity" has proved to be subject to such misapplication and abuse, the only effective remedy is to jettison it altogether, and substitute the term "dual persona doctrine." The choice of the term "persona" is not the result of any predilection for elegant Latinisms for their own sake; it is dictated by the literal language of the typical third-party statute, which usually defines a third party, in the first instance, as "a *person* other than the employer." This is quite different from "a person acting in a capacity other than that of employer." The question is not one of activity, or relationship—it is one of identity. [*Id.* at 399, quoting 2A Larson, Workmen's Compensation, § 72.81(a), p 14-290.89.]

Because the Supreme Court in *Howard* expressly abandoned the looser standards commonly associated with the dual-capacity doctrine in favor of stricter standards more often identified with the dual-persona doctrine, we will, for clarity's sake, refer to the Michigan judicially created exception to the WDCA as the dual-persona doctrine.

---

[4] It is clear that Michigan's judicially created exception to the WDCA does not turn on the mere existence of a legally recognized separate persona. A separate legal entity (a subsidiary corporation) existed in *Wells, supra,* yet the Supreme Court declined to find any judicially created exception to the exclusive remedy provision of the WDCA.

Providing a name by which to identify this judicial exception to the WDCA does not, unfortunately, provide clarity or guidance to us regarding the proper application of this exception. The limits to this judicial exception have not been clearly defined by the Supreme Court. Nor has the Supreme Court expressly adopted or referenced the law of another state to provide guidance in defining the limits of this exception. In the absence of such guidance it is up to this Court to define the limits of this exception.[5]

---

[5] The dissent suggests that we lack authority "to unilaterally curtail a doctrine that our Supreme Court has unequivocally adopted. Rather we should apply the doctrine as it is customarily and uniformly understood, because the Supreme Court has not indicated we are free to deviate from it." We disagree with our colleague's conclusion that the Supreme Court has "unequivocally" adopted the dual-persona doctrine. To the extent the Supreme Court has adopted this doctrine, the limits of it remain vague and largely undefined. While the Supreme Court has recognized this exception to the WDCA, it has never applied this exception to circumvent the exclusive remedy provisions of the WDCA. In both *Howard, supra,* and *Wells, supra,* the Supreme Court recognized the strong public policy supporting a liberal application of the WDCA. In fact, in *Wells,* the Supreme Court reached results that it characterized as a "reverse-piercing" of the defendant's corporate veil to apply the exclusive remedy provision of the WDCA. The *Wells* Court held:

Our disregard of the separate corporate entities of Firestone and its wholly owned subsidiary is premised upon our recognition of the important public policies underlying the Michigan Workers' Disability Compensation Act and our belief that a contrary determination would be inequitable under the facts of this case. . . .

If the statute is to be construed liberally when an employee seeks benefits, it should not be construed differently when the employer asserts it as a defense to a tort action brought by the employee who claimed and accepted benefits arising from the employment relationship. [*Wells, supra* at 651.]

Nor are we persuaded by the dissent's argument that we are bound to blindly accept the reasoning of *Billy v Consolidated Machine Tool Corp,* 51 NY2d 152; 432 NYS2d 152; 412 NE2d 934 (1980), because the "leading treatise" in worker's disability compensation law cites *Billy* as a "prime example of the doctrine's proper application." Significantly, the Supreme Court has not identified this treatise as the definitive authority on this judicially created exception to statutory law. Nothing in *Howard, supra,*

The dual-persona doctrine, allowing a tort suit in addition to worker's compensation, "is applicable only in those situations in which 'the employer has a second identity which is completely distinct and removed from his status as employer.'" *Howard, supra* at 399-400, quoting *Wells, supra* at 653. This second function must also generate obligations on the part of the "employer" that are unrelated to such status. *Handley v Wyandotte Chemicals Corp,* 118 Mich App 423, 429; 325 NW2d 447 (1982). "The exception exists only where the employer-employee relationship is entirely unrelated or only incidentally involved with the cause of action." *Handley, supra* at 429; see also *Wells, supra* at 653. When the situation at issue in the proposed tort suit takes place in the "course and scope of his employment," the "claim amounts to an assertion that he was provided an unsafe environment in which to work," which comes within the specific purview of the WDCA. *Atkinson v Detroit,* 222 Mich App 7, 13; 564 NW2d 473 (1997); see also *Howard, supra* at 404. The Supreme Court in *Howard* set out two examples of the type of situation to which the dual-persona doctrine was intended to apply:

---

suggests that the Supreme Court intended to adopt Larson's analysis of the dual-persona doctrine as a guiding force for future cases. In *Howard,* the Supreme Court did indeed rely on this treatise in defining Michigan's judicially created exception to the WDCA. However, the Supreme Court's reliance on this treatise is limited to Larson's warning against the "looseness" and "overextension" of judicially created exceptions to worker's disability compensation legislation. *Howard, supra* at 399. Interestingly, the Supreme Court noted in *Howard* that any judicially created exception to worker's disability compensation laws turns on each state's "statute, history, and legal culture[.]" *Id.* at 401. In the absence of a clear definition of the limits of this judicially created exception to the WDCA, we too must examine Michigan's statute and consider, where appropriate, Michigan's history and legal culture to provide meaning to this doctrine, which the Supreme Court recognized but failed to define with meaning and clarity.

A hypothetical application of the doctrine arises where an employee of an automobile manufacturing company is struck and injured away from the work site by a defective automobile manufactured by the employer. An actual application arose when a city employee was treated at a municipal hospital for a work-related injury, and later sought to bring an action against other city employees for medical malpractice. [*Howard, supra* at 398-399 (citations omitted).]

*Howard, supra,* establishes that the judicial exception to the WDCA's exclusive remedy provision is intended to apply only in exceptional situations. These exceptional situations are found only where there is a genuine case of a separate legal personality and the relationship between the cause of action and the plaintiff's employment is no more than incidental.

Accordingly, we must determine whether SMS had a separate legal persona as the successor in liability to SMT, the company that allegedly modified the machine window at issue, such that the exception to the exclusive remedy provision would allow a separate tort suit against SMS. All the parties agree that SMS employed the decedent. Thus, it is clear that an employment relationship existed for purposes of the exclusive remedy provision. See *Clark, supra* at 689. Indeed, the decedent's family collected benefits under the WDCA. The record shows that the benefits came from SMS. Therefore, we start from the premise that SMS would clearly prevail under the plain language of the exclusive remedy provision because SMS is indisputably the decedent's employer.

However, plaintiff claims that SMS also has an independent second persona under the dual-persona doctrine—that of the successor in liability to SMT, the company that plaintiff alleges made the negligent

modification. It is clear that had SMS itself manufactured or modified the window at issue here, the WDCA would not allow a separate tort suit for any negligence. This Court has held that a secondary function of an employer in constructing a plant and machinery in that plant generated no additional obligations unrelated to those of an employer. *Handley, supra* at 429-430; see also *Wells, supra* at 653. This specific obligation to make a safe product as a manufacturer/modifier is so intertwined with the employer's duty to provide a safe workplace that it cannot logically be separated into two distinct legal obligations. See *Kimzey v Interpace Corp, Inc,* 10 Kan App 2d 165, 168; 694 P2d 907 (1985). However, we have found no Michigan cases directly addressing the question of liability in this case, where the employer is the successor to the company that manufactured or modified machinery that is alleged to have caused injury to an employee.

The dissent relies on the New York case of *Billy v Consolidated Machine Tool Corp,* 51 NY2d 152; 432 NYS2d 152; 412 NE2d 934 (1980). The facts in *Billy* were very similar to those in the case at issue here, with the defendant company voluntarily accepting the liability of the predecessor manufacturer/modifier of the machine used only in the predecessor's own business. In *Billy,* the plaintiff's decedent was killed in the course of his employment when a machine, owned by his employer, malfunctioned. The machine's manufacturer caused the machine to be installed for use in its own plant, then merged with the decedent's employer before the decedent was hired. The decedent's employer was now the manu-

facturer's successor in liability. *Id.* at 159. In applying the dual-persona doctrine, the *Billy* court concluded:

> It is well settled that the policies underlying the Worker's Compensation Law do not preclude the maintenance of a common-law action against third-party tort-feasors who may be responsible, in whole or in part, for an employee's injuries. . . . In the present case, had the corporate identities of [the companies who built and installed the machine] been preserved, plaintiff would have had a right to maintain an action against those corporations on the theory that they exposed her deceased husband to the risk of injury by designing and manufacturing a defective boring mill and "ram." It is only because these corporations were consolidated and then merged with [the decedent's employer] that plaintiff is now without the means to hold them directly accountable as third-party tort-feasors.
>
> . . . In short, we conclude that the exclusivity rule . . . is not available as a defense to a common-law tort action under these facts.
>
> Conceptually, the deceased employee's executrix is suing not the decedent's former employer, but rather the successor to the liabilities of the two alleged tort-feasors. That USM also happens to have been the injured party's employer is not of controlling significance, since the obligation upon which it is being sued arose not out of the employment relation, but rather out of an independent business transaction between [the decedent's employer and those companies that manufactured and installed the equipment]. What distinguishes this case from the "dual-capacity" cases . . . is that here the tort in question was not committed by the employer or any of its agents; instead, the tort, if any, was committed by third parties, which, as it appears on the present record, never had an employer-employee relationship with the injured party. [*Id.* at 160-161.]

At first glance, this explanation sounds logical. There is, at least conceptually, a third party to whom the plaintiff can point as the alleged tortfeasor, so the

policy behind worker's compensation does not seem implicated as it would be in the case where the employer is also the manufacturer.

While we thus understand the argument in *Billy*, which is adopted by the dissent here, and do not find this holding to be without reason, we nevertheless find a narrower interpretation to be more persuasive. The dual-persona doctrine carved out by the Supreme Court—although an entirely reasonable exception in our judgment—is nonetheless a judicially created exception to the general statutory rule. Absent sanction from the Michigan Legislature, we are not inclined to extend the scope of the doctrine to a broader range of circumstances than those in which the doctrine has already been found to apply. Because of its purely judicial origins and its apparent lack of express warrant in the statutory law—indeed arguably its inconsistency with the plain language of the law that simply precludes an employee from suing his "employer" absent an intentional tort—the dual-persona doctrine should be interpreted more narrowly rather than more broadly in those cases in which the scope of the doctrine is uncertain. Otherwise, the dual-persona doctrine threatens to impinge on and therefore undermine the worker's compensation laws, which "have been carefully structured to establish and define the rights and liabilities as between employer and employee." *Langley v Harris Corp*, 413 Mich 592, 598; 321 NW2d 662 (1982). In order to preserve this careful balance, the Supreme Court has said that the WDCA is to be construed liberally in order to compensate employees and protect employers from employee suits. *Wells, supra* at 651. The necessary corollary to this rule with regard to the

dual-persona exception is that the exception must be narrowly construed to fit only the policy reasons that gave rise to its inception,.and not allowed to expand to envelop situations that the WDCA was otherwise intended to cover.

Even Larson's treatise, heavily relied on by the dissent, recognizes that courts considering the legal fictions of "dual persona" or "dual capacity" must define these fictions very narrowly and with extreme caution. In addition to cautioning against "looseness" and "overextension" in the application of these fictions in *Howard, supra* at 399, Larson warns:

> It is one thing to resort to such fictions when the task is to create new law out of thin air, or to break down the artificial walls of old forms of action. It is quite another thing to take a statute consisting of 45 pages of fine print, complete with elaborate definitions of what the key words mean, and then announce judicially that those words do not mean what the legislature said they mean. [6 Larson, § 113.01[2], p 113-4.]

With this in mind, we must necessarily determine the dual-persona doctrine's applicability case by case. Thus, even if we accept the premises for liability in *Billy, supra*—that it may be inappropriate to allow a company that has accepted the legal liabilities of a predecessor to escape these liabilities merely because the successor fortuitously also happens to be the employer of the injured plaintiff—we must still apply it to the specific facts of the case at hand to determine if worker's compensation policy is implicated by finding successor liability. In our judgment, it is this step that the *Billy* court and those following *Billy* failed to take and follow to its logical conclusion.

A narrower interpretation and application to facts that were "indistinguishable" from those in *Billy*, and thus also very similar to those in our case, is found in *Corr v Willamette Industries, Inc*, 105 Wash 2d 217, 220-223; 713 P2d 92 (1986). The Washington Supreme Court commented on *Billy* and two other decisions following *Billy's* analysis:

> These three decisions, however, fail to carry through the analysis of the dual persona doctrine to its reasonable conclusion. The doctrine rests on the premise that if the merging corporations had not merged, the injured claimant could have sued the manufacturing corporation as a third person tortfeasor. Under the facts of this case, however, an injured claimant never could have sued Corco as a third person because Corco had no liabilities or obligations flowing to Willamette's employees. . . .
>
> . . . [A]bsent the merger, Corr could have been injured by this machinery only if he had been an employee of Corco. As an employee of Corco, however, Corr would be limited to the exclusive remedies of the workers' compensation act. Corco never owed obligations or had liabilities to persons other than its own employees relative to these compressor units. Accordingly, Corco never could be subject to third person liability. Because Corco could not be subject to third person liability, such liability cannot be imposed upon Willamette simply because the two corporations merged. [*Corr, supra* at 222-223 (citations omitted).]

We fully agree with the analysis of the *Corr* court. Although the dissent here emphasizes the fact that the court in *Corr* did not explicitly adopt the dual-persona doctrine, this is inapposite, because the court did not reject the doctrine, but rather simply declined to apply it under the specific facts of *Corr*. Thus, we do not rely on *Corr* for its "rejection" of the dual-persona doctrine, but rather for its thoughtful analy-

sis of the doctrine under circumstances similar to those in our case.

We are unprepared to follow the holding of *Billy*, *supra*, and assume that a predecessor company in our case is automatically a third party that can be sued through the successor company that happens to also be the employer. Although plaintiff argues that "successor liability" may form the basis of a dual-persona suit, accepting this idea in theory does not end the inquiry. Instead, we must look to see if there are separate obligations created by the predecessor that can form the basis of a dual-persona suit. Simply being a successor in liability does not make a company liable—there must be an allegedly viable legal claim against the predecessor in order for the case to survive a motion for summary disposition. In addition, in determining the existence of a legal claim, we must also examine the defenses and immunities of the predecessor, since a company cannot inherit the liabilities without the defenses of the predecessor. It is inherently logical that a company cannot be liable if there was a legal defense or immunity to the allegedly tortious action, and in that case there would thus have been no liability for the successor to succeed. This corollary to the idea of successor "liability" was pointed out by the dissenting judge in *Billy*, *supra* at 165 (Meyer, J., dissenting).

In this case, SMS voluntarily concedes that it is a successor to the liability of SMT, at least for the purposes of this appeal. Plaintiff alleges that the modifications made to the window of the decedent's machine by SMT were negligent and caused the decedent's death. This machine was modified only for SMT's own use. It was never sold or leased. It came

under the power of SMS only after the entire corpora-
tion with all its assets was bought by the holding
company and the name changed to SMS. The decedent
was never an employee of SMT. While there is a con-
ceptual third party here, SMT, for which SMS has
assumed liability, we must look further to find an
actual legal obligation on the part of SMT toward the
decedent. The difficulty with this, as in *Corr*, is that
the machine was never used by anyone other than
employees of SMT. Therefore, SMT only had an obliga-
tion to its own employees. Even if we extend this
obligation to the decedent in some way, we must also
extend the immunities that go with it. This duty to
provide a safe workplace was covered by the WDCA, so
if an SMT employee had been injured, he could only
have received worker's compensation benefits and
would have been precluded from suit by the exclusive
remedy provision of the WDCA. Thus, the decedent
here could not have sued SMT had he been injured as
an employee of SMT, and he was only in a position to
be injured by the machine as an employee of SMS.

The dissent argues that we should not rely on the
analysis of *Corr* because the "stream of commerce"
argument in that opinion is too ambiguous. However,
unlike the "stream of commerce" argument criticized
in Larson, the point we make here is not simply that
any introduction of a good into the stream of com-
merce provides the basis of third-party liability. Fur-
ther, the court in *Corr* did not merely argue that
"goods cannot be a source of third-party liability
unless the predecessor corporation manufactured
them for resale." The idea of introducing goods into
the "stream of commerce" is relevant only insofar as
this provides an actual legal claim against the prede-

cessor and therefore against the successor in liability under the facts in a specific case. Thus, in this case, there would be an identifiable legal obligation if SMT had sold or leased the machine to SMS, where the decedent was killed by it. In that case, although the decedent was employed by SMS, who was also the successor in liability to SMT, SMT would have had legal obligations to the buyers or lessors of its machine that could be separated from the obligations of SMS as the employer. See *Johnson v Purex Corp*, 128 Mich App 736; 341 NW2d 198 (1983); *Robards v Estate of Kantzler*, 98 Mich App 414; 296 NW2d 265 (1980). Courts properly applied the dual-persona doctrine in two successor liability cases in which equipment was sold by the predecessor company to the successor company before liability was transferred in *Gurry v Cumberland Farms, Inc*, 406 Mass 615, 620; 550 NE2d 127 (1990); *Robinson v KFC Nat'l Management Co*, 171 Ill App 3d 867, 869; 121 Ill Dec 721; 525 NE2d 1028 (1988).

However, in this case, the decedent's accident could not possibly have happened but for the fact that he was employed by SMS, and the accident was a direct result of his work for SMS. Although there was a "third party" that modified the machine, the decedent never would have been in a position to be injured by the machine at issue but for the stock purchase. While it may be unfair for a company to escape liability merely through the fortuity of a transfer of assets, it is equally unfair to impose liability where it would not otherwise arise merely because of the transfer of assets. This is the case at hand. Imposing liability on SMS here for the actions of SMT in modifying a piece of machinery for its own use would undermine the pur-

poses of the WDCA. The WDCA balances the benefits to employees of receiving compensation for work-related injuries without suit against the benefits to employers of limiting compensation and suits. These countervailing benefits to the employer would be frustrated if we allowed plaintiff to sue here because there is no way SMT or SMS could have avoided liability other than by not transferring any of the assets of the company. Presumably, SMT paid for a worker's compensation program for its employees and assumed that any accidents related to its machines would be covered by the program. SMS did the same. They could not do more, yet the dissent would tell them here that they cannot escape paying twice for this accident. Certainly employers will come increasingly to question the benefits of maintaining a worker's compensation program if we continue to enlarge the exceptions. In our judgment, this exception to the statutory worker's compensation exclusive remedy provision should be limited to cases that do not implicate the policy rationale underlying the WDCA. Keeping in mind that this exception is of judicial derivation, and lacks legislative sanction (while at least arguably being inconsistent with the plain language of the WDCA), we are compelled to interpret it narrowly and do not choose to enlarge it where it would undermine the purposes of the WDCA.

Therefore, for these reasons, we believe that the dual-persona doctrine exception to the WDCA exclusive remedy provision should not be extended to this case. The situation at hand provides no clear legal obligation on the part of SMT that could form the basis of a separate persona for SMS as the successor in liability to SMT. Instead, the only obligation found here

was to employees of SMT, which is an obligation competently covered by the WDCA. Although the facts of this case make it somewhat more complicated than many of the cases that have been analyzed under the dual-persona doctrine in Michigan in the past, it is clear that but for the decedent's employment and job capacity with SMS, the accident would not have happened. Thus, the employer-employee relationship is not "entirely unrelated or incidentally involved with the cause of action." *Handley, supra* at 429. Where this is the case, the benefits under the WDCA are the proper and the only remedy for an employee's accident.

Second, we must determine whether plaintiff can bring suit against the holding company. There are several arguments made by the parties in this case, relating to whether the holding company, the parent company and sole shareholder of SMS, can be held liable for the modification by SMT independently of SMS, or through SMS by piercing the corporate veil, or whether it can escape liability through SMS by a reverse piercing of the corporate veil. However, regardless of whether the holding company is or is not charged with successor liability for SMT's liabilities generally, we must disagree with the trial court's denial of the holding company's motion for summary disposition. Just as with SMS, if plaintiff here had presented some legal obligation on the part of SMT that was allegedly breached and could give rise to a suit against SMT, we would have to confront the issue of successor liability. However, SMT could never have been held to answer to the decedent for its conduct with regard to the modified machine at issue because only SMT employees could have been injured by the machine

before the asset transfer and only SMS employees could have been injured after the asset transfer. Either way, the WDCA precludes a suit. Thus, there is no liability for SMT that could be inherited by the holding company here. Any further consideration of this issue at the trial court is unnecessary.

For these reasons, we reverse the trial court's denial of both defendants' motion for summary disposition.

Reversed.

ZAHRA, J., concurred.

HOEKSTRA, J., (*dissenting*). The majority recognizes that our Supreme Court adopted the dual-persona doctrine in *Howard v White*, 447 Mich 395; 523 NW2d 220 (1994), but it declines to apply the doctrine in this case. The majority does not argue that the facts of this case are somehow incompatible with the dual-persona doctrine. Rather, the majority holds that it can freely pick and choose case by case which dual personas are covered by the doctrine and which are not. By using this analysis, and adding to it a problematic "stream of commerce element," the majority concludes that policy precludes us from applying the dual-persona doctrine in this case. Although I find the majority's policy considerations to be compelling, I would argue that stare decisis does not permit this intermediate appellate court to unilaterally curtail a doctrine that our Supreme Court has unequivocally adopted. Rather, we should apply the doctrine as it is customarily and uniformly understood, because our Supreme Court has not indicated that we are free to deviate from it. A uniform and customary application, when done here, mandates that we allow plaintiff to

pursue this cause of action. Accordingly, I respect-
fully dissent.

In this case, we are asked to decide whether an
employee can sue his employer, as a successor in lia-
bility, in a third-party lawsuit under Michigan's
Worker's Disability Compensation Act (WDCA). Ordina-
rily, the WDCA provides the exclusive remedy for an
employee who is injured on the job. However, where
a third party's negligence has caused the injury, an
employee can collect workers' compensation benefits
and sue the third party for damages. MCL 418.827;
MSA 17.237(827). This case, however, addresses a
hybrid recovery situation where the employer also
stands in the shoes of the third-party tortfeasor. In
*Howard, supra,* our Supreme Court defined an excep-
tion to the WDCA's exclusive remedy provision, the
"dual-persona doctrine," that allows an injured
employee to recover both worker's compensation
benefits *and* traditional tort remedies in this type of
situation.

However, despite our Supreme Court's unequivocal
adoption of the dual-persona doctrine, the majority
refuses to apply it here.[1] The majority reaches this
conclusion despite the fact that it agrees that, in

---

[1] I note that SMS Holding Company, Inc., has stipulated that it is the
successor in interest to the corporation that allegedly modified the
machine in question. In their "supplement brief in support of motion for
summary disposition," defendants wrote:

The plaintiffs allege liability based on the modification of a
machine purchased by Saginaw Machine and Tool Company Divi-
sion of Wickes Corporation on July 15, 1980. . . . Saginaw Machine
and Tool Company Division of Wickes Corporation no longer exists
and plaintiff must therefore pursue this matter against a corpora-
tion, now in existence, that would have successor liability. In this
particular case Saginaw Machine Systems, Inc., now SMS Holding
Company is clearly the corporation which purchased the assets of

cases like this one, the dual-persona doctrine is generally thought to apply. Indeed, the majority notes that the facts in *Billy v Consolidated Machine Tool Corp*, 51 NY2d 152; 432 NYS2d 152; 412 NE2d 934 (1980), are very similar to the facts here. Not only did the *Billy* court find that the doctrine applied, but the leading treatise in this area cites the decision as a prime example of the doctrine's proper application. See 6 Larson, Workers' Compensation Law, § 113.01[3], pp 113-5 to 113-6. I find it noteworthy that our Supreme Court relied on this treatise in *Howard, supra*, when it adopted the dual-persona doctrine. On the basis of that fact, I must conclude that our Supreme Court joined the treatise author's endorsement of *Billy* as a prime example of the doctrine's proper application. Given that the facts in *Billy* are similar to those here, I must find that the doctrine applies and that plaintiff should be permitted to pursue her claim.[2] Indeed, I do not see how it could be otherwise.

---

Saginaw Machine and Tool Company a Division of Wickes Corporation including the machine and the facilities at issue.

The law is clear that successor liability attaches where the buying corporation is a mere continuation of the selling corporation. In this particular case with [sic] SMS Holding Company not only purchased the equipment and facilities from the Wickes Corporation in November of 1993, but continued to operate the facilities in its same capacity. The SMS Holding Company must clearly be found to be the successor corporation.

[2] Several other jurisdictions also have followed the *Billy* court. See, for example, *Robinson v KFC Nat'l Management Co*, 171 Ill App 3d 867; 121 Ill Dec 721; 525 NE2d 1028 (1988) ("We conclude that the exclusive remedy provision of the Workers' Compensation Act . . . does not bar an employee who has accepted workers' compensation benefits from maintaining a tort action against his employer, when the manufacturing corporation, by whom he was never employed, has merged with the employer corporation prior to the time of the employee's injuries."); *Kimzey v Interpace Corp, Inc*, 10 Kan App 2d 165; 694 P2d 907 (1985) (the plaintiff

Initially, the majority cites policy concerns as a basis for rejecting the doctrine in this particular case. I share some of the majority's concerns, especially regarding how this judicially created exception might limit the legislative intent behind the WDCA. I am convinced, however, that my policy concerns should not subvert my duty to apply well-settled Supreme Court precedent.[3] I simply do not accept the majority's argument that applying the dual-persona doctrine here requires that we extend the doctrine's scope. As I noted above, the facts here are very similar to those in *Billy, supra*, and that case is generally understood to be a leading example of how courts should apply the dual-persona doctrine.

Further, I find the majority's reliance on *Howard*'s cautionary language regarding "looseness" and "overextension" to be inapplicable here. The cautionary language, originally found in Larson's treatise, was

---

could sue the employer despite the exclusivity provision of the Workers' Compensation Act because his employer was acting as a second persona unrelated to its status as the plaintiff's employer when it assumed the liabilities, through merger, of the corporation that manufactured the defective equipment); *Gurry v Cumberland Farms, Inc*, 406 Mass 615; 550 NE2d 127 (1990) (corporation that was successor to both manufacturers of product that allegedly caused worker's death and to worker's employer could not for its own convenience disregard its predecessor corporations' separate identities and pierce the corporate veil so as to take advantage of exclusive remedy provision of worker's compensation law in wrongful death action brought against corporation arising from death of worker allegedly caused by product manufactured by predecessor); and *Schweiner v Hartford Accident & Indemnity Co*, 120 Wis 2d 344; 354 NW2d 767 (1984) (under the dual-persona doctrine, the defendant's status as a successor in liability was a sufficiently separate persona to allow the plaintiff to bring a third-party action).

[3] I note that our Supreme Court decided *Howard* peremptorily. I think that this case presents an excellent opportunity for our Supreme Court to give plenary consideration to this jurisprudentially significant area of the law and to weigh and resolve the policy concerns expressed by the majority.

cited by the *Howard* Court as a basis for rejecting the dual-*capacity* doctrine, which is a much broader exception to the WDCA's exclusivity provision than the dual-persona doctrine. This language does not support the majority's narrow interpretation of the dual-persona doctrine, nor was it intended to bar the doctrine's application in cases like this one.

The majority relies, in part, on the reasoning expressed in *Corr v Willamette Industries, Inc*, 105 Wash 2d 217; 713 P2d 92 (1986). Essentially, the *Corr* court argues that goods cannot be the source of third-party liability unless the predecessor corporation manufactured them for resale. Although the "stream of commerce" argument has a certain intuitive appeal, it has been employed in other contexts without success. See 6 Larson, § 113.01[4], pp 113-6ff. For example, suppose a corporation's employees use a product that the corporation also sells, and the corporation merges with a successor corporation. The product then injures someone hired after the merger. The question necessarily becomes whether this fact pattern meets the Washington court's stream of commerce test. Unfortunately, ambiguity plagues the stream of commerce concept, and it eventually forces courts to draw meaningless distinctions.[4] *Id.*

---

[4] For example, how much of a product must a company insert into the stream of commerce before it will be held liable? Is the sale of one of a given product sufficient? If so, is there a meaningful distinction to be made between the sale of that item during a merger and its sale sometime before the merger? If one item is not sufficient, then how much should be required? Is there a meaningful difference between a company that uses fifty percent of its product in-house and sells the remaining fifty percent, and one that uses ninety percent of its product in-house and sells ten percent? These questions demonstrate the intractable difficulties of the stream of commerce argument.

In addition to the troubling ambiguities inherent in its stream of commerce doctrine, the Washington court reached its conclusions in a very different legal context. As the dissent in *Corr* points out, Washington has not adopted the dual-persona doctrine. *Corr, supra* at 224 (Dore, J., dissenting). That fact alone distinguishes the case from this one. Because our Supreme Court has explicitly adopted the doctrine and because we are an intermediate appellate court, we are bound to apply it.[5]

In addition to the inevitable practical problems encountered in adding the stream of commerce element to the dual-persona doctrine, I find that such rationalizations also undermine the majority's argument that the policy underlying the WDCA should trump a judicially created doctrine. The majority attempts to distinguish (1) a case where the defective goods are sold, or inserted into the "stream of commerce," by one company to another before the two companies merge from (2) a case where the plaintiff's employer acquired the defective goods through a merger. The majority would allow the plaintiff injured by the defective goods to bring his suit under the for-

---

[5] The majority claims that the fact that the *Corr* court rejected the dual-persona doctrine is inapposite. I disagree. Given the procedural posture of this case, the distinction is critical. The Washington court, when faced with this issue, was writing on a blank slate. Absent any precedence to the contrary, it could adopt whatever permutation on the dual-persona doctrine it desired. Here, however, as acknowledged by the majority opinion, our Supreme Court has explicitly adopted Larson's version of the dual-persona doctrine. Larson cites *Billy* as the quintessential application of the doctrine. The majority cites Larson several times as standing for the proposition that the doctrine should be applied only in extraordinary cases. Conspicuously absent from the majority's opinion, however, is any reference to Larson's endorsement of the *Billy* court's reasoning. I maintain that, until the Supreme Court says otherwise, we are a dual-persona state, and that fact requires us to allow plaintiff to bring her suit.

mer situation, but not the latter. The majority argues that the policy underlying the WDCA, that worker's compensation is the sole remedy against an employer, should prevent the plaintiff from bringing a third-party suit against his employer in the second situation. However, the policy is still confounded by the first situation, because a plaintiff-employee is permitted to bring a third-party suit against his employer. The majority has failed to demonstrate a meaningful distinction between buying a defective product on the market and buying it as part of a merger. In both situations, the party responsible for the defect cedes liability to the employer, and in both situations the employee pursues a third-party liability suit against his employer. I see no meaningful difference between the two types of successor liability.[6]

If the dual-persona doctrine is to apply in any case, it applies here. The predecessor corporation was an entity so separate from defendant's employer that the law recognizes it as a separate person. We are not free to draw the troubled distinctions relied on by the Washington court, and I can find no case rejecting the view expressed by both the treatise and the *Billy* court *in a state where the dual-persona doctrine has been adopted.* Therefore, I would find that plaintiff can bring her case against defendant SMS Holding

---

[6] The majority also argues that only an employee would be in a position to be injured by the equipment, but this argument also fails. First, one can easily imagine any number of circumstances whereby a nonemployee might be injured by the machine. Consider the liability of SMS, Inc., for the defective window if the flying metal had hit a visitor to its factory. Second, if SMS, Inc., had sold the machine to another company, and the accident occurred at the machine's new location, SMS, Inc., as the successor in liability, would be liable for the defective modification. In short, I see no merit in the argument that only an employee could be injured by the machine.

Company, Inc., as the successor in interest to the corporation that allegedly modified the turning machine.