**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-1116

DEBRA BRAGA; ANTONIO BRAGA,
Plaintiffs, Appellants,

v.

GENLYTE, INC.,
Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. Rya W. Zobel, U. S. District Judge]

Before

Selya, Circuit Judge,

John R. Gibson,[*] Senior Circuit Judge,

and Greenberg,[**] Senior Circuit Judge.

Brian R. Cunha, with whom Brian Cunha & Associates, P.C. was
on brief, for appellants.
Brian H. Lamkin, with whom Timothy P. VanDyck and Edwards &
Angell, LLP were on brief, for appellee.

February 13, 2003

---

[*]Hon. John R. Gibson, of the Eighth Circuit, sitting by
designation.

[**]Hon. Morton Greenberg, of the Third Circuit, sitting by
designation.

**JOHN R. GIBSON, <u>Senior Circuit Judge</u>**.  Antonio and Debra Braga appeal from an order of the district court dismissing, under Rule 12 (b)6 of the Federal Rules of Civil Procedure, their amended complaint against Genlyte Group, Inc. based on injuries that Antonio Braga sustained while operating a press during the course of his employment with Genlyte-Thomas Group, LLC.  The Bragas claim that these injuries were caused by a defective press that had been modified on several occasions either by Genlyte or its predecessors, and argue that they can sue Genlyte Group, Inc. as the successor in liability for the negligence of Lightolier, Inc., a company which merged into Genlyte in 1992.  The Bragas also argue that dismissal without leave to file a further amended complaint was in error.  We reverse and remand.

I.

On reviewing this Fed. R. Civ. P. 12(b)(6) order, we recite the facts as alleged by the Bragas and accept as true all well-pleaded factual averments and indulge all reasonable inferences in favor of the plaintiff. <u>SEC</u> v. <u>SG Ltd.</u>, 265 F.3d 42, 46 (1st Cir. 2001).  In their amended complaint, the Bragas allege that Antonio Braga sustained his injury while operating a hydraulic press designed to shape sheet metal for the manufacture of light fixtures at a plant in Fall River, Massachusetts.  In order to operate this press, a worker would have to push two electrical buttons attached to the body of the press.  As long as both buttons

were pushed within four seconds of one another, the press would activate, driving the press ram down into a "die space" into which the sheet metal designated for molding would be inserted. On November 18, 1998, Mr. Braga was working with the press when a piece of metal inserted into the die space caused it to jam. Mr. Braga attempted to correct this problem by manually removing the piece of metal that caused the jam from the press. In the course of leaning into the press to remove the jam, while his left hand was under the press ram, he inadvertently depressed both palm buttons within a four second interval. The press was activated, and the press ram crashed down on Mr. Braga's left hand, severing all of his fingers.

The Bragas allege that at the time of his injury, Mr. Braga was employed by an entity called Genlyte-Thomas Group, LLC.[1] Genlyte-Thomas was formed on April 24, 1998, after the defendant, Genlyte, had merged with another corporation, Thomas Industries. Genlyte became a controlling member of Genlyte-Thomas and continued to own the machinery at the Fall River plant after the merger. Before this merger, Genlyte had also been Mr. Braga's immediate employer. Furthermore, Genlyte had previously acquired the hydraulic press from another corporation named Lightolier, Inc.

---

[1]The amended complaint does not admit, but the Bragas state in their brief, that Antonio has received workers' compensation benefits, presumably paid by or on behalf of Genlyte-Thomas, his immediate employer at the time of injury.

("Lightolier"), which in turn had originally acquired the press in 1982. The Bragas allege that Lightolier was once a subsidiary of Genlyte; however, sometime in 1992, Genlyte merged with Lightolier and dissolved the corporation, although it continued to do business under the Lightolier name.

The Bragas originally filed a claim for negligence and loss of consortium in Massachusetts state court.[2] Genlyte removed the case to federal court on the basis of diversity jurisdiction, 28 U.S.C. § 1332 (2000). After removal, the Bragas filed an amended complaint that alleged that Lightolier had purchased the press on January 12, 1982, and that since then either Genlyte "and/or Lightolier" had negligently modified the press on five different occasions.[3] Although they allege that Genlyte itself negligently modified the press on November 14, 1995, February 15, 1996, and March 29, 1996, they also make two other allegations of negligent modification without specifying the party making the modifications. From the face of the complaint, it is not clear from these two allegations whether the Bragas are attempting to state a claim against Genlyte directly or as the successor in liability to the negligence of Lightolier. Nevertheless, we must

_____

[2]The Bragas originally filed this claim against Lightolier. Genlyte's counsel entered an appearance as "Lightolier" in its petition for removal, which states that Lightolier ceased to exist in 1991.

[3]The Bragas' amended complaint named Genlyte as the defendant.

construe these allegations in the light most favorable to the Bragas, and so we interpret the amended complaint, as urged by the Bragas' counsel both in the district court and on appeal, to allege successor liability. This is the issue that the parties have briefed exhaustively before us.

Genlyte moved under Fed R. Civ. P. 12(b)(6) to dismiss the amended complaint, arguing that as the majority owner of Genlyte-Thomas Group, LLC, Mr. Braga's employer at the time of injury, it is immune from suit under the exclusivity provision of the Massachusetts Workers' Compensation Act. Genlyte also argued that it is immune even if the amended complaint is read to allege negligence on the part of Lightolier, because the complaint alleges only that Lightolier modified the machine for the use of its own employees. In response, the Bragas presented a further amended complaint to the district court which stated that Genlyte "by virtue of the merger with 'Lightolier, Inc.,' was responsible for the negligent modifications, changes, repairs, and/or maintenance of the subject hydraulic press that caused [Mr. Braga's] injuries," seemingly an attempt to allege more clearly that Genlyte was liable for the negligence of Lightolier. The district court made a handwritten entry on the bottom of Genlyte's 12(b)(6) motion stating, "Allowed, as Lightolier, Inc. would also be an employer for this purpose. Herbolsheimer v. SMS Holding Co., Inc., 608 N.W.2d 487 (Mich. Ct. App. 2000)," and dismissed the case in its

entirety.

## II.

We review de novo the district court's dismissal of the Bragas' amended complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). SEC v. SG Ltd., 265 F.3d 42, 46 (1st Cir. 2001). We reverse the order of the district court if we conclude that the facts viewed in the light most favorable to the Bragas justify recovery under "any supportable legal theory." Cruz v. Melecio, 204 F.3d 14, 21 (1st Cir. 2000). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Since this case comes to the federal courts on removal based on diversity jurisdiction, we must under Erie Railroad Co. v. Tompkins, 304 U.S. 64 (1938), apply state substantive law, which in this case is the law of Massachusetts. As we observed in Blinzler v. Marriott International, Inc., 81 F.3d 1148, 1151 (1st Cir. 1996), the task of a federal court sitting in diversity is limited, in the first instance, to applying those rules of law announced by the highest court of the State. If that court has not directly addressed the issues raised in the case, the federal court must then "ascertain the rule the state court would most likely follow under the circumstances, even if our independent judgment on the

question might differ." Id.  We may seek guidance "in analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law."  Id.

Here, the district court was required to apply the substantive law of Massachusetts in deciding whether the Bragas have alleged facts sufficient to state a claim for relief. Moores v. Greenberg, 834 F.2d 1105, 1107 (1st Cir. 1987).  For that reason, its one line order relying on Herbolsheimer v. SMS Holding Co., Inc., 608 N.W.2d 487 (Mich. Ct. App. 2000), a case decided by the Michigan Court of Appeals, is of little help.  The district court made no effort to determine whether the amended complaint states a claim under Massachusetts law, under the standard we set out in Blinzler.  We are reluctant to affirm an order of dismissal where the district court neglected to analyze the questions raised by the complaint under the law governing the case, especially when, as now, Massachusetts law arguably may permit the maintenance of a cause of action.

Furthermore, Herbolsheimer was primarily concerned with the scope of the dual persona doctrine under the earlier Michigan Supreme Court case of Howard v. White, 523 N.W.2d 220 (Mich. 1994). Both the majority and dissent in Herbolsheimer discussed at length the decision of the New York Court of Appeals in Billy v. Consolidated Machine Tool Corp., 412 N.E.2d 934, 939-941 (N.Y.

1980). <u>Billy</u> held liable a corporation that was the plaintiff's employer but which had become the successor in liability to another corporation that it had acquired and which had manufactured the machine that injured the plaintiff. <u>Herbolsheimer</u>, 608 N.W.2d at 494-96 (majority), 499-501 (dissent). In addition, both the majority and the dissent in <u>Herbolsheimer</u> cited <u>Gurry</u> v. <u>Cumberland Farms</u>, 550 N.E.2d 127 (Mass. 1990), in the course of their analysis. <u>Herbolsheimer</u>, 608 N.W.2d at 497 (majority), 499 n.2 (dissent). <u>Gurry</u>, 550 N.E.2d at 130-31, was a decision by the Supreme Judicial Court of Massachusetts that explicitly applied the dual persona doctrine in the context of successor liability. That <u>Herbolsheimer</u>, the basis for the district court's ruling, presents differing views under Michigan law as to successor liability points to the necessity of focused discovery and an analysis of this issue under Massachusetts law. The discussion of <u>Gurry</u>, a Massachusetts case, and <u>Billy</u>, upon which <u>Gurry</u> relied in part, by both the majority and dissent in <u>Herbolsheimer</u> highlights the necessity of an analysis of a more fully developed factual scenario under Massachusetts law. In other words, the complexity of the issues raised in <u>Herbolsheimer</u> and <u>Gurry</u> underscores the need to analyze, in a concrete factual setting, the question of whether an employer that was also the successor in interest to a former corporation whose negligence allegedly caused the plaintiff's injury could be liable under Massachusetts law. Certainly, an analysis of <u>Gurry</u> is

central to this question.

The questions raised by the intersection of the immunity of an employer under the workers' compensation scheme and successor liability are complex and fact-bound. Because we encounter these issues on appeal from a Rule 12(b)(6) motion, we are not prepared to conclude at this stage that the Bragas can prove no set of facts that would entitle them to relief. See Conley, 355 U.S. at 45-46.

### III.

We do not pretend that the amended complaint is a model of clarity. The Bragas, by a better-delineated pleading, could probably have avoided time and trouble. But despite its lack of specificity, we cannot say that the amended complaint stumbles over the modest threshold erected by Rule 12(b)(6). For that reason, we reverse and remand for further proceedings consistent with this opinion. We regard the district court's constructive denial of the leave to further amend the complaint as moot, but the Bragas may, if they wish to do so, renew that motion in the district court.

Reversed and remanded. No costs.