******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LISA ROBBINS, ADMINISTRATRIX (ESTATE OF
ELIJAH JAMAL HEZEKIA ROBBINS MARTIN),
ET AL. *v.* PHYSICIANS FOR WOMEN'S
HEALTH, LLC, ET AL.
(SC 18961)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald,
Espinosa and Vertefeuille, Js.

*Argued December 10, 2013—officially released May 27, 2014*

*Frank H. Santoro*, with whom, on the brief, was *R. Cornelius Danaher, Jr.*, for the appellants (named defendant et al.).

*Steven D. Ecker*, with whom were *M. Caitlin S. Anderson* and, on the brief, *Joel T. Faxon*, for the appellees (plaintiffs).

*Jennifer L. Cox* and *Jennifer A. Osowiecki* filed a brief for Connecticut Hospital Association et al. as amici curiae.

*Opinion*

ZARELLA, J. The sole issue in this appeal is whether a covenant not to sue executed by the named plaintiff, Lisa Robbins, as administratrix of the estate of her son, Elijah Jamal Hezekia Robbins Martin,[1] in favor of the corporate tortfeasor, Shoreline Obstetrics and Gynecology, P.C. (Shoreline), forecloses, as a matter of law, the imposition of successor liability on the named defendant, Physicians for Women's Health, LLC, and the defendant Women's Health USA, Inc.[2] The defendants purchased Shoreline's assets approximately nine months after the events that led to the filing of the present action. The defendants claim that the Appellate Court improperly reversed the judgment of the trial court, which had concluded that the covenant not to sue Shoreline prevented the plaintiff from seeking to recover from the defendants.[3] The plaintiff responds that the covenant did not preclude her from commencing an action against the defendants under a theory of successor liability. We agree with the defendants and, accordingly, reverse the judgment of the Appellate Court.

The following facts and procedural history are set forth in the Appellate Court's opinion. "On October 10, 2005, the plaintiff gave birth to a son at Lawrence and Memorial Hospital . . . in [the city of] New London. Shortly after his birth, the child died. Jonathan Levine, an obstetrician, and Donna Burke-Howes, a certified nurse midwife, were present at the time and were responsible for rendering medical care to the plaintiff and her son. Levine and Burke-Howes were employees of Shoreline. In July, 2006, Shoreline was sold to the defendants. Shortly thereafter, the plaintiff filed suit against Levine, Burke-Howes, Shoreline, [the hospital], and the defendants, alleging medical malpractice.

"On July 3, 2008, the defendants filed a motion for summary judgment, arguing, inter alia, that they 'had no connection to the care and treatment rendered to the [plaintiff's son] nor were they in a business or contractual relationship with . . . Shoreline [at the time of his death],' such that they could be liable for the plaintiff's malpractice claim. In response, the plaintiff filed an amended complaint alleging that the defendants were liable under a theory of successor liability and . . . an objection to the defendants' motion for summary judgment on that ground. Specifically, the plaintiff argued that the continuity of enterprise exception applied because 'Shoreline still called itself Shoreline, the same people were employed, the same management existed and the same location and equipment were utilized.' The trial court agreed with the plaintiff and denied the motion for summary judgment, stating that 'the defendants ha[d] failed to meet their burden of establishing the absence of a genuine issue of material fact as to successor liability . . . .'

"On November 14, 2008, after reaching a settlement and executing two separate covenants not to sue, the plaintiff withdrew her claims against Levine, Burke-Howes and Shoreline. The record demonstrates that this settlement was reached by providing the plaintiff with monetary compensation through a medical malpractice insurance policy that covered both Levine and Burke-Howes. Insurance documents and interrogatory responses indicate that Levine and Burke-Howes were each insured for up to $1 million. An affidavit submitted by the plaintiff's attorney, dated July 6, 2009, states that Levine, Burke-Howes and Shoreline 'tender[ed] [the] policy limits' in this settlement.

"On July 1, 2009, the defendants filed a second motion for summary judgment. In this motion, the defendants argued that 'successor liability . . . derives exclusively from and is coterminous with the liability of [Shoreline].' From this premise, the defendants argued that the plaintiff could not proceed because the covenant not to sue 'completely discharged' Shoreline from liability. On December 7, 2009, the court . . . [granted] the defendants' motion for summary judgment on these grounds. . . .

"On appeal [to the Appellate Court], the plaintiff claim[ed] that her execution of a covenant not to sue in favor of Shoreline [did] not prevent her from seeking recovery from the defendants under a theory of successor liability. In doing so, the plaintiff argue[d] that a covenant not to sue is an agreement not to proceed against a particular defendant that, unlike a release, does not discharge liability for the underlying cause of action. In response, the defendants argue[d] that successor liability may afford no greater recovery against a successor than is available against the predecessor and, therefore, the covenant not to sue executed in favor of Shoreline also inure[d] to their benefit.

"On September 21, 2011, [the Appellate] [C]ourt ordered the parties to file supplemental briefs addressing whether the plaintiff's recovery from Shoreline foreclosed the possibility of successor liability as a matter of law. The defendants filed a supplemental brief on October 5, 2011, in which they argue[d] that successor liability may be imposed only when the predecessor corporation is no longer able to afford the plaintiff relief. The defendants also assert[ed] that the plaintiff's settlement with Shoreline demonstrate[d] that she [could not] meet this threshold requirement as a matter of law. The plaintiff filed a supplemental brief on October 6, 2011, arguing that a case premised on a theory of successor liability may be pursued when recovery has been obtained from the predecessor corporation and that, in such a case, 'the successor entity is liable for the difference between [the] plaintiff's damages . . . and the amount . . . that the plaintiff was able to recover from the predecessor.' " (Footnotes

omitted.) *Robbins* v. *Physicians for Women's Health, LLC*, 133 Conn. App. 577, 580–83, 38 A.3d 142 (2012).

A divided Appellate Court reversed the trial court's judgment on two grounds. Id., 587–88, 595–96; see also id., 596 (*Bear, J.*, dissenting). The court first concluded that successor liability may be imposed under the mere continuation and continuity of enterprise theories if the predecessor no longer represents a viable source of relief; id., 586–87; but that, in the absence of undisputed evidence in the record demonstrating the amount of the plaintiff's damages, it was "unable to conclude that Shoreline represented a viable source of recovery . . . as a matter of law." Id., 588. The court next concluded that a covenant not to sue, unlike a release, does not discharge the underlying cause of action, and, therefore, the covenant not to sue executed by the plaintiff in favor of Shoreline did not prevent her from seeking to recover from the defendants. Id., 595. The Appellate Court thus remanded the case to the trial court for a determination of whether Shoreline no longer remained a viable source of recovery such that successor liability could be imposed on the defendants. See id., 587–88 and n.10, 596.

Judge Bear issued a dissenting opinion in which he concluded that, even if sufficient facts existed to support the plaintiff's recovery under the mere continuation and continuity of enterprise theories of successor liability, the plaintiff had no viable claim against the defendants under either theory. Id., 604 (*Bear, J.*, dissenting). He reasoned that, because "any liability of the successors necessarily is derivative of and, thus, dependent on the existence of liability of the predecessor"; id., 605 (*Bear, J.*, dissenting); the plaintiff's voluntary settlement of her claim against the defendants' predecessor, Shoreline, discharged and extinguished the liability of both Shoreline and the defendants as successors in the absence of a claim of fraud. Id., 604–606 (*Bear, J.*, dissenting).

This court granted the defendants' petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly determine that a covenant not to sue, executed by the plaintiff in favor of a corporate tortfeasor, does not foreclose the imposition of successor liability, as a matter of law, on the subsequent purchaser of that company's assets?" *Robbins* v. *Physicians for Women's Health, LLC*, 304 Conn. 926, 41 A.3d 1052 (2012).

The defendants claim that the covenant not to sue discharged the underlying action against Shoreline and its successors. The plaintiff argues to the contrary that the covenant not to sue did not foreclose an action against the defendants as successors. We agree with the defendants.

The standard of review is well established. "Practice

Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the . . . motion for summary judgment is plenary." (Internal quotation marks omitted.) *Yellow Book Sales & Distribution Co.* v. *Valle*, 311 Conn. 112, 116–17, 84 A.3d 1196 (2014).

The issue of whether a plaintiff who executes a covenant not to sue a corporate tortfeasor is foreclosed, as a matter of law, from seeking to recover from the subsequent purchasers of the corporate assets under a theory of successor liability is one of first impression for this court. Accordingly, we begin by examining the governing legal principles on successor liability.

"[T]he general rule is that where a corporation sells or otherwise transfers all of its assets, its transferee is not liable for the debts and liabilities of the transferor, and that [the] liability of a new corporation for the debts of another corporation does not result from the mere fact that the former is organized to succeed the latter. . . . This general rule of corporate nonliability serves, in effect, as a security blanket that protects corporate successors from unknown or contingent liabilities of their predecessors." (Footnotes omitted.) 19 Am. Jur. 2d 424–25, Corporations § 2319 (2004); see also *LiButti* v. *United States*, 178 F.3d 114, 124 (2d Cir. 1999); *Ricciardello* v. *J.W. Gant & Co.*, 717 F. Supp. 56, 57–58 (D. Conn. 1989); *Chamlink Corp.* v. *Merritt Extruder Corp.*, 96 Conn. App. 183, 187, 899 A.2d 90 (2006); 15 C. Jones, Fletcher Cyclopedia of the Law of Corporations (2008 Rev.) § 7122, p. 209.

The rule is nonetheless subject to four well established exceptions. A successor corporation may be held liable for the debts and liabilities of its predecessor when "there is an express or implied assumption of liability," "the transaction amounts to a consolidation or merger," "the transaction is fraudulent," or "the transferee corporation is a mere continuation or reincarnation of the old corporation." 19 Am. Jur. 2d, supra, § 2320, p. 426; see also *Golden State Bottling Co.* v. *National Labor Relations Board*, 414 U.S. 168, 182–83 n.5, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973); *LiButti* v. *United States*, supra, 178 F.3d 124; *Chamlink Corp.* v. *Merritt Extruder Corp.*, supra, 96 Conn. App. 187; 19 C.J.S. 267–68, Corporations § 747 (2007).

In the present case, the defendants claim that the

plaintiff's execution of the covenant not to sue Shoreline extinguished all of Shoreline's potential liability under the mere continuation exception on which she relies, leaving no liability to be passed on to the defendants as successors. We agree.

The term "successor corporation" means "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." Black's Law Dictionary (9th Ed. 2009) p. 1569. Thus, the liability of a successor corporation is derivative in nature and the successor may be held liable for the conduct of its predecessor only to the same extent as the predecessor. As another court has explained, "[r]egardless [of] the exception, successor liability does not create a new cause of action against the purchaser so much as it *transfers* the liability of the predecessor to the purchaser. . . . [S]ee [*Golden State Bottling Co.* v. *National Labor Relations Board*, supra, 414 U.S. 181–86]; see also *Northern Ins. Co. of New York* v. [*Allied Mutual Ins. Co.*], 955 F.2d 1353, 1357 [9th Cir.] (the liability of the predecessor is transferred to the successor) [cert. denied, 505 U.S. 1221, 112 S. Ct. 3033, 120 L. Ed. 2d 903 (1992)]; *Clark Equipment Co.* v. *Dial Corp.*, 25 F.3d 1384, [1387–88] (7th Cir. 1994) (successor liability distinguished from personal and independent liability of the successor); *Preyer* v. [*Gulf Tank & Fabricating Co.*], 826 F. Supp. 1389, 1395 (N.D. Fla. 1993) (successor liability does not create new rights in the plaintiff); *Russell* v. *SunAmerica Securities, Inc.*, [United States District Court, Docket No. E90-0084 (L)] (S.D. Miss. [March 6] 1991) (liability of successor is coterminous with liability of predecessor; if predecessor is not liable then neither is successor). The nature of the liability itself does not change. Thus, while successor liability may give a party an alternative entity from whom to recover, the doctrine does not convert the claim to an in rem action running against the property being sold. Nor does the claim have an existence independent of the underlying liability of the entity that sold the assets." (Citation omitted; emphasis altered; footnote omitted.) *In re Fairchild Aircraft Corp.*, 184 B.R. 910, 920 (Bankr. W.D. Tex. 1995),[4] vacated on other grounds, 220 B.R. 909 (Bankr. W.D. Tex. 1998); see also *Herbolsheimer* v. *SMS Holding Co.*, 239 Mich. App. 236, 252, 608 N.W.2d 487 ("[s]imply being a successor in liability does not make a company liable—there must be an allegedly viable legal claim against the predecessor in order for the case to survive a motion for summary disposition"), appeal denied, 463 Mich. 873, 618 N.W.2d 590 (2000); L. Hock, comment, "Successor Liability in Asset Purchases of Bankrupt Health Care Providers," 19 Bankr. Dev. J. 179, 182 (2002) ("Successor liability is an equitable doctrine that depends on state law. It does not give rise to a new cause of action, nor does it create an in rem claim running against the purchased

property. Instead, successor liability provides for a transfer of liability from the original corporation to the acquiring corporation." [Footnotes omitted.]). This conclusion is consistent with Connecticut's law on mergers, which provides that all liabilities and contract rights of a corporation that merges into the survivor, such as the covenant not to sue at issue in the present case, are vested in the survivor. See General Statutes § 33-820 (3) and (4).

Given this understanding of successor liability as limited to the existing liability of the predecessor corporation, the effect on the defendants of the plaintiff's covenant not to sue Shoreline is clear. "A covenant not to sue is a covenant by one who had a right of action at the time of making it against another person, by which he or she agrees not to sue to enforce such right of action." 76 C.J.S. 598, Release § 3 (2007); see also *J & J Farmer Leasing, Inc.* v. *Citizens Ins. Co. of America*, 472 Mich. 353, 357–58, 696 N.W.2d 681 (2005) ("a covenant not to sue is . . . an agreement not to sue on an existing claim"); *Colton* v. *New York Hospital*, 53 App. Div. 2d 588, 589, 385 N.Y.S.2d 65 (1976) ("a covenant not to sue is an agreement by one having a present right of action against another not to sue to enforce such right"). A covenant not to sue therefore terminates the liability of one against whom a right of action could have been brought, either in perpetuity or for a stipulated period of time. It follows that the plaintiff's execution of the covenant not to sue Shoreline in perpetuity foreclosed, as a matter of law, her right of action not only against Shoreline, but against any subsequent purchaser of Shoreline's assets under the mere continuation theory of successor liability. In other words, having relinquished her right to bring a legal action against Shoreline, there remained no right of action that could be transferred to the defendants as successors.[5] See, e.g., *Syenergy Methods, Inc.* v. *Kelly Energy Systems, Inc.*, 695 F. Supp. 1362, 1365–66 (D.R.I. 1988) (covenant not to sue predecessor precluded action against successor).[6] Accordingly, we conclude that the Appellate Court improperly reversed the judgment of the trial court, which determined that the covenant not to sue Shoreline precluded the plaintiff from bringing a claim against the defendants for Shoreline's allegedly tortious conduct.

The plaintiff argues that "[a] covenant not to sue, unlike a release, does not release nonsettling parties"; (emphasis omitted); and that the covenant not to sue Shoreline "was intended and executed for the specific purpose of resolving the case only against [Shoreline], while specifically carving out and preserving the claims against the two remaining nonsettling defendants." We are not persuaded.

A release is "the relinquishment, concession, or giving up of a right, claim, or privilege, by the person in whom

it exists or to whom it accrues, to the person against whom it might have been demanded or enforced." 76 C.J.S., supra, § 1, p. 597; see also *Rosen* v. *Florida Ins. Guaranty Assn.*, 802 So. 2d 291, 295 (Fla. 2001) ("[a] release is an outright cancellation or discharge of the entire obligation as to one or all of the alleged joint wrongdoers" [internal quotation marks omitted]); *J & J Farmer Leasing, Inc.* v. *Citizens Ins. Co. of America*, supra, 472 Mich. 357 ("[a] release immediately discharges an existing claim or right"). Thus, the distinction between a covenant not to sue, pursuant to which one agrees not to enforce a right of action, and a release, pursuant to which one surrenders a right of action, is irrelevant in the present context because the effect on successor liability is the same. In both cases, there is no remaining right of action against the tortfeasor that may be transferred to its successor. See *Ex parte Healthsouth Corp.*, 974 So. 2d 288, 296 (Ala. 2007) ("the operation and effect of a covenant not to sue and that of a release may be the same as between the parties to the agreement"). The fact that the covenant not to sue in the present case contained a provision reserving the plaintiff's right to sue the defendants does not overcome this principle.[7]

Moreover, all of the case law on which the plaintiff relies in making the foregoing argument addresses the effect of releases and covenants not to sue on the liability of joint tortfeasors. See *Viera* v. *Cohen*, 283 Conn. 412, 433–34, 927 A.2d 843 (2007); *Alvarez* v. *New Haven Register, Inc.*, 249 Conn. 709, 725 n.10, 735 A.2d 306 (1999); *Bonczkiewicz* v. *Merberg Wrecking Corp.*, 148 Conn. 573, 581, 172 A.2d 917 (1961); *Bridgeport-City Trust Co.* v. *Hirsch*, 119 Conn. 586, 589, 178 A. 423 (1935); *Dwy* v. *Connecticut Co.*, 89 Conn. 74, 79–80, 86, 92 A. 883 (1915). Joint tortfeasors are persons who have acted in concert in committing the wrong or have engaged in independent conduct that has united to cause a single injury, thus making them jointly and severally liable for the wrongful conduct. See Black's Law Dictionary, supra, p. 1627; see also 4 Restatement (Second), Torts § 886A, comment (b), p. 338 (1979) ("[Joint tortfeasors are] two or more persons who are liable to the same person for the same harm. It is not necessary that they act in concert or in pursuance of a common design, nor is it necessary that they be joined as defendants."). The defendants, however, had nothing to do with the wrongful conduct at issue in this case, and no claim has been made to that effect. Accordingly, the law on the liability of joint tortfeasors is inapplicable.

The plaintiff also relies on cases involving joint tortfeasors and employer liability under the doctrine of respondeat superior in arguing that successor liability is merely a form of vicarious liability that is "not erased or terminated merely because the 'primary' defendant settles a claim." (Emphasis omitted.); see, e.g., *Alaska*

*Airlines, Inc.* v. *Sweat*, 568 P.2d 916, 930 (Alaska 1977); *Hovatter* v. *Shell Oil Co.*, 111 Ariz. 325, 326–27, 529 P.2d 224 (1974); *Ochoa* v. *Vered*, 212 P.3d 963, 968–69 (Colo. App. 2009); *Convit* v. *Wilson*, 980 A.2d 1104, 1120–21 (D.C. 2009); *JFK Medical Center, Inc.* v. *Price*, 647 So. 2d 833, 834 (Fla. 1994); *Miller* v. *Grand Union Co.*, 270 Ga. 537, 537–38, 512 S.E.2d 887 (1999); *Pelo* v. *Franklin College*, 715 N.E.2d 365, 366–67 (Ind. 1999); *Sampay* v. *Morton Salt Co.*, 395 So. 2d 326, 328–29 (La. 1981); *Atlas Tack Corp.* v. *DiMasi*, 37 Mass. App. 66, 71–72, 637 N.E.2d 230 (1994); *Boucher* v. *Thomsen*, 328 Mich. 312, 321–22, 43 N.W.2d 866 (1950); *Plath* v. *Justus*, 28 N.Y.2d 16, 19–23, 268 N.E.2d 117, 319 N.Y.S.2d 433 (1971); *Leon* v. *Parma Community General Hospital*, 140 Ohio App. 3d 95, 99–100, 746 N.E.2d 689 (2000); *Knutson* v. *Morton Foods, Inc.*, 603 S.W.2d 805, 806–807 (Tex. 1980); *Woodrum* v. *Johnson*, 210 W. Va. 762, 772, 559 S.E.2d 908 (2001). The plaintiff contends that all three relationships permit a transfer of liability from one party to another, and, therefore, the effect of a covenant not to sue on a joint tortfeasor, an employer, and a successor is the same. We disagree.

The plaintiff ignores the fact that successor liability is governed by special rules that do not apply to joint tortfeasors or employers. One such rule is that, even under the mere continuation theory of successor liability, a successor corporation is liable for the debts and liabilities of its predecessor only to the same extent as the predecessor. See *In re Fairchild Aircraft Corp.*, supra, 184 B.R. 921 n.11; *Herbolsheimer* v. *SMS Holding Co.*, supra, 239 Mich. App. 252. The special protection accorded a successor in this context is not hard to understand when one considers that successors, unlike joint tortfeasors or employers, have no connection to the harm that gave rise to the liability. As previously explained, joint tortfeasors are directly connected to the wrongful conduct. Employers are likewise deemed connected because, to the extent the tortious conduct occurred within the scope of the employment relationship, employees are viewed as having acted on behalf of their employers. See, e.g., 1 Restatement (Third), Agency § 2.04, p. 139 (2006) ("[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment"); Restatement (Third), Torts: Apportionment of Liability § 7, comment (j), p. 69 (2000) ("When a party is liable solely on the basis of another person's tortious conduct [and] there is no direct responsibility to assign to the party to whom liability is imputed . . . the party who committed the tortious acts or omissions and the party to whom liability is imputed are treated as a single unit for the assignment of responsibility. [Thus], an employer who is vicariously liable for the negligence of an employee and the employee are treated as a single entity."). By assigning responsibility to employers for the legal consequences of their employees' errors of judgment and

other lapses, the doctrine of respondeat superior "creates an incentive for principals to choose employees and structure work within the organization so as to reduce the incidence of tortious conduct." 1 Restatement (Third), Agency, supra, § 2.04, comment (b), p. 141; W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 69, pp. 500–501 (employer liable for torts of employee because employer has control over selection, instruction, and supervision of employees, will profit from enterprise, and is better able to bear costs of doing business). In contrast, the purchaser of a corporation's assets, who very likely contemplated and completed the purchase after the wrongful conduct occurred, is unconnected to the harm caused by the corporation's tortious conduct. Consequently, cases involving the liability of employers and joint tortfeasors provide no guidance in cases involving successor liability because the successor had no ability to prevent the harmful conduct from occurring.

The plaintiff further contends that the covenant not to sue did not extinguish her right to recover from the defendants because cases of vicarious liability do not involve a single or unitary cause of action that is discharged by a settlement with the active or primary tortfeasor. See W. Prosser, "Joint Torts and Several Liability," 25 Cal. L. Rev. 413, 424 (1937) (describing survival of common-law notions regarding "unity of a cause of action against joint tortfeasors" as "deplorable"). This is a straw man argument. No one has described the plaintiff's right of action against Shoreline, least of all the defendants, as a common-law unitary cause of action that was discharged by the plaintiff's covenant not to sue. Moreover, any analysis based on this concept is irrelevant in the present case because the traditional common-law understanding of a unitary cause of action presumed the existence of joint tortfeasors, one of whom had settled with the plaintiff by way of a release or a covenant not to sue. See id., 418 ("In the earliest cases, where the defendants acted in concert, 'the act of one was the act of all,' and each was therefore liable for the entire loss sustained by the plaintiff, even though he might have caused only a part of it. The rule grew out of the common law concept of the unity of the cause of action; the jury could not be permitted to apportion . . . damages, since there was but one wrong. Innumerable cases have repeated the statement, that the liability of 'joint tortfeasors' is entire, and cannot be divided." [Footnotes omitted.]); see also *Miller* v. *Jarrell*, 684 P.2d 954, 956 (Colo. App. 1984) ("Traditionally, the release of a joint tortfeasor served to release all other joint tortfeasors. This rule stemmed from the common law notion as to the unity of a cause of action."); *Cram* v. *Northbridge*, 410 Mass. 800, 801, 575 N.E.2d 747 (1991) (under common-law "unity of discharge" doctrine, "the discharge of one joint tortfeasor constituted a discharge of all

other joint tortfeasors" because rule was based on view that "only one cause of action arises from the same tort and that plaintiffs should be prevented from recovering several times for the same injury" [internal quotation marks omitted]). Consequently, this argument has no merit.[8]

The plaintiff finally argues that policy considerations strongly favor her legal position rather than that of the defendants. She argues that the use of a covenant not to sue to achieve a partial settlement without forsaking the right to pursue further action against parties whose liability is vicarious or derivative encourages and facilitates settlements, satisfies the goal of the tort system to provide full compensation to victims of negligence, and discourages health care providers from gaining an advantage against potential plaintiffs by intentionally underinsuring in order to reduce their malpractice costs. All of these arguments, however, have glaring weaknesses. Permitting plaintiffs to bring lawsuits against successors following the execution of covenants not to sue their predecessors could discourage the purchase of corporate assets that might be subject to future corporate liabilities or, equally harmful, could discourage settlement agreements altogether for fear of indemnification actions should the successors be sued. Likewise, public policy does not favor full compensation for tortious conduct, or opportunities for windfall recoveries, from parties that are not responsible for the conduct and could not have done anything to prevent it. As for the claim regarding underinsurance by health care providers, Connecticut law establishes minimum professional liability insurance requirements for a wide array of health care professionals. See, e.g., General Statutes § 20-11b (b) (physicians and surgeons); General Statutes § 20-28b (chiropractors); General Statutes § 20-39a (natureopathic physicians); General Statutes § 20-58a (podiatrists); General Statutes § 20-73d (physical therapists); General Statutes § 20-94c (advanced practice registered nurses); General Statutes § 20-126d (dentists); General Statutes § 20-126x (dental hygienists); General Statutes § 20-133b (optometrists).

The plaintiff's policy arguments also must be weighed against the reasons for the well settled general rule against successor liability, which include that the rule comports with "the fundamental principle of justice and fairness" that one is responsible "for one's own act and not for the totally independent act of others," and that it "promotes [the] free alienability of corporate assets," thereby encouraging their productive use. *Gallenberg Equipment, Inc.* v. *Agromac International, Inc.*, 10 F. Supp. 2d 1050, 1053 (E.D. Wis. 1998), aff'd mem., 191 F.3d 456 (7th Cir. 1999). This latter consideration is especially relevant in today's rapidly changing health care industry, in which hospitals contemplating mergers or potential purchases of group practices might

be "leery of investing in a liability time-bomb"; C. Rogala, comment, "Nontraditional Successor Product Liability: Should Society Be Forced to Pay the Cost?," 68 U. Det. L. Rev. 37, 64 (1990); if a covenant not to sue the predecessor corporation should fail to preclude liability against the successor.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.

[1] Robbins also brought this action in her individual capacity. In the interest of simplicity, we refer to Robbins as the plaintiff throughout this opinion.

[2] The plaintiff initially named as defendants in this action Physicians for Women's Health, LLC, Women's Health USA, Inc., Lawrence and Memorial Hospital (hospital) and Jonathan Levine. Shoreline and Donna Burke-Howes were subsequently added as defendants. The claims against the hospital, Shoreline, Levine, and Burke-Howes were settled before the trial court rendered judgment in this action. Consequently, Physicians for Women's Health, LLC, and Women's Health USA, Inc., are the only remaining defendants. We refer to Physicians for Women's Health, LLC, and Women's Health USA, Inc., collectively as the defendants throughout this opinion.

[3] The covenant executed between the plaintiff, Jonathan Levine, and Shoreline provides in relevant part: "[The parties] understand and affirm that by executing this covenant not to sue [Levine and Shoreline are] forever discharg[ed] . . . from all claims . . . including . . . those arising from . . . any care and treatment rendered by [Levine and Shoreline] to [the plaintiff or her son] . . . ." The covenant also provides: "This covenant not to sue does not [a]ffect claims against the Physicians for Women's Health LLC entities, which remain defendants in the pending action."

"The covenant between the plaintiff and [Donna] Burke-Howes contains substantially similar language." *Robbins* v. *Physicians for Women's Health, LLC*, 133 Conn. App. 577, 581 n.2, 38 A.3d 142 (2012).

[4] Although *In re Fairchild Aircraft Corp.* ultimately was vacated on complicated procedural grounds, the court's analysis of successor liability remains valid.

[5] In light of this conclusion, there is no need to consider the parties' arguments with respect to the viable source of relief theory on which the Appellate Court relied in remanding the case to the trial court for further proceedings. Even if Shoreline could have served as a viable source of relief for the plaintiff following the sale of its assets to the defendants, the covenant not to sue terminated Shoreline's liability and, therefore, that of the defendants as successors.

The plaintiff suggests that a triable issue remains because, on April 16, 2009, the trial court denied the defendants' initial summary judgment motion dated July 3, 2008, on the ground that liability was not precluded under the continuing enterprise theory and that this decision was not appealed. We disagree. The defendants filed their July, 2008 summary judgment motion before the plaintiff executed the covenant not to sue in December, 2008. In their second motion for summary judgment dated July 1, 2009, the defendants claimed that they were entitled to judgment as a matter of law because the covenants not to sue precluded any further action against them. The plaintiff again relied on the continuing enterprise theory of successor liability, arguing, inter alia, that the trial court already had decided that there was a jury issue under this theory, but the trial court concluded that the covenant not to sue extinguished the plaintiff's claim of successor liability against the defendants as well as Shoreline. Accordingly, no viable claim remained in connection with the trial court's decision on the defendants' initial summary judgment motion.

[6] The plaintiff argues that *Syenergy Methods, Inc.*, is inapplicable because the plaintiff in that case, unlike the plaintiff in the present case, executed a covenant not to sue the predecessor company *before* it sued the successor, and the District Court "explicitly indicated that it would have honored an express reservation of rights in the settlement agreement if it had contained one, but it did not . . . [which is] the opposite of the present case." We disagree. The fact that the agreement in *Syenergy Methods, Inc.*, was executed before, rather than after, the sale of the company assets to the successor is a distinction without a difference. With respect to the language referring to a "reservation of rights," the District Court stated: "[I]f . . . the

debts and liabilities of the selling corporation would pass to the purchasing corporation [under the merger or mere continuation theories of successor liability], then the symmetries of justice require that the rights and other contractual entitlements of the selling corporation, unless expressly reserved, must pass as well." *Syenergy Methods*, *Inc.* v. *Kelly Energy Systems*, *Inc.*, supra, 695 F. Supp. 1365–66. In addition to the fact that the issue of an express reservation of rights was not before the court in *Syenergy Methods*, *Inc.*, the language "unless expressly reserved"; id., 1366; appears to refer to a reservation of rights by the *seller*, not a reservation of rights by the plaintiff who executed the covenant not to sue the seller. Accordingly, we do not agree with the plaintiff in the present case that the District Court's passing reference to an express reservation of "the rights and other contractual entitlements" of the selling corporation; id.; is in any way contrary to our conclusion that the plaintiff's execution of the covenant not to sue Shoreline foreclosed her, as a matter of law, from bringing a claim against the defendants on the basis of successor liability.

[7] We note that, although a release is an executed agreement that requires no further performance, whereas a covenant not to sue is executory and requires "continuous and prospective" performance, "either permanently or for a limited, stated period of time," the performance being "the obligor's future forbearance in asserting a claim [that] exists or may accrue against the obligee"; (emphasis omitted; internal quotation marks omitted) *Estate of Lien* v. *Pete Lien & Sons*, *Inc.*, 740 N.W.2d 115, 124 (S.D. 2007); this distinction has no effect on the issue in the present case.

[8] We also reject the plaintiff's argument that the defendants' claim is based on the theory that they must be discharged from liability so that they will not sue Shoreline for indemnification if they should be found vicariously liable. The defendants did not make this argument, and, in any event, the plaintiff concedes that the theory "has no relevance" in the present case because "the [defendants have] no known indemnification rights against [Shoreline] . . . ."