*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SEBASTIAN KUHLGERT, Conservator of
ELISABETH OSTENDORF,

        Plaintiff-Appellee,

v

MICHIGAN STATE UNIVERSITY, and
BOARD OF TRUSTEES OF MICHIGAN
STATE UNIVERSITY,

        Defendants,

and

UNITED EDUCATORS,

        Intervening Defendant-Appellant.

FOR PUBLICATION
May 21, 2019
9:15 a.m.

Nos. 332442; 338363
Court of Claims
LC No. 15-000047-MZ

ELISABETH OSTENDORF,

        Plaintiff-Appellee,

and

UNITED EDUCATORS,

        Intervening Plaintiff-Appellant,

and

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,

        Intervening Plaintiff,

-1-

v

No. 344533
MCAC
LC No. 17-000013

MICHIGAN STATE UNIVERSITY,

Defendant-Appellee.

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

CAMERON, J.

These consolidated appeals all concern whether the injuries that plaintiff Elisabeth Ostendorf (hereinafter Ostendorf), a German national, suffered when a truck owned by Michigan State University (MSU) struck her as she was walking on the campus triggers the exclusive-remedy provision of the Worker's Disability Compensation Act (WDCA), MCL 418.101 *et seq.* See MCL 418.131(1) (except where an intentional tort is involved, benefits as provided by the WDCA constitute an employee's "exclusive remedy against the employer for a personal injury"). If not, then MSU's no-fault insurer, State Farm Mutual Automobile Insurance Company, and its excess liability insurer, United Educators (hereinafter UE), are responsible for providing insurance coverage for her injuries. We affirm.

## I. FACTS

Ostendorf was a post-doctoral research associate at MSU and lead scientist involving a project funded through a grant from the Advanced Research Projects Agency for the Department of Energy. She was in the United States on a J-1 Visa as a participant in an exchange visitor program as authorized under the Mutual Educational and Cultural Exchange Act (MECEA), 22 USC 2451 *et seq.* The goal of Ostendorf's project was to screen plants for increased photosynthetic capacity. She began her work in 2012 for a one-year term, with the anticipation that the project could be renewed annually and last for three or more years. She was injured during her third term.

In October 2014, Ostendorf left the Food and Safety Toxicology Building where she worked and walked towards her vehicle parked in a lot located elsewhere on the MSU campus. She had walked approximately 900 feet when, while completing a text message, she emerged from the sidewalk abutting a driveway and was struck by a truck. At that time, Cole Gibson was backing up his truck—an MSU vehicle—toward a loading dock. Ostendorf suffered severe injuries.

## II. PROCEDURAL BACKGROUND

This case involves a lengthy, complicated procedural history. In March 2015, Ostendorf's conservator, plaintiff Sebastian Kuhlgert (hereinafter "plaintiff"), commenced a negligence action in the Court of Claims against MSU and its Board of Trustees. Plaintiff did not file a claim for workers' compensation benefits, and MSU did not report an injury to the workers' compensation bureau. MSU has an excess liability insurance policy through UE, and

the policy does not provide coverage for any obligation for which the insured may be held liable under any workers' compensation law. Over a year after the complaint was filed, UE filed a motion to intervene in the action because it believed that MSU failed to pursue the argument that plaintiff's claims were barred by the exclusive-remedy provision in the WDCA. The Court of Claims held that the motion to intervene was untimely and that MSU had adequately represented UE's interests by raising the exclusive-remedy provision in its affirmative defenses. The court further noted that the exclusive-remedy provision would not apply if, at the time of the accident, Ostendorf was not on the premises of where her work was performed. We denied UE's application for leave to appeal, and UE filed an application for leave to appeal with the Michigan Supreme Court.

While the application for leave was pending in our Supreme Court, UE and State Farm filed applications for mediation or petitions to intervene in a separate proceeding with the Workers' Compensation Board of Magistrates. At issue in that proceeding was not the extent to which Ostendorf was engaged in her employment with MSU at the moment of her accident, but rather whether she was exempted from workers' compensation coverage through an exemption of the definition of "employee" set forth in MCL 418.161(1)(b) for "[n]ationals of foreign countries employed pursuant to section 102(a)(1)[1] of the mutual educational and cultural exchange act of 1961 . . . ."

In November 2016, our Supreme Court remanded the first case to this Court for consideration as on leave granted with instructions to address the exclusive-remedy provision of the WDCA and whether UE could intervene. *Kuhlgert v Michigan State Univ*, 500 Mich 890 (2016). The Court ordered:

> The Court of Appeals shall consider: (1) whether the plaintiff's claims are barred by the exclusive remedy provision of the [WDCA], see MCL 418.131(1); *Sewell v Clearing Machine Corp*, 419 Mich 56, 62; 347 NW2d 447 (1984); and if not, (2) whether the Court of Claims erred by denying [UE's] motion to intervene. [*Kuhlgert*, 500 Mich at 890.]

In February 2017, UE moved this Court to stay the appeal pending the outcome of the workers' compensation proceedings. We granted UE's request and agreed to hold the appeal in abeyance until the workers' compensation magistrate issued a decision.

In the Workers' Compensation Board of Magistrates proceeding, the magistrate examined the text and history of the pertinent legislation, along with Ostendorf's documents relating to her status as a foreign national in the United States. However, before the magistrate issued its opinion, plaintiff sought relief from the Court of Claims in a third proceeding, asking the Court of Claims to consider the issue that was currently before the magistrate—whether Ostendorf's employment status itself exempted her from the definition of "employee" for purposes of the WDCA. UE requested that the Court of Claims decline to address the issue in deference to the workers' compensation proceedings, and again sought to intervene so that it

---

[1] 22 USC 2452(a)(1).

-3-

could challenge Ostendorf's status as exempting her from coverage under the WDCA should the court elect to decide that issue.

Before the Court of Claims could render a decision, the WDCA magistrate issued an opinion and concluded that Ostendorf "was a research scholar employed by MSU pursuant to . . . the MECEA and therefore considered not to be an employee." In March 2017, UE filed a claim for review with the Michigan Compensation Appellate Commission (MCAC). In April 2017, the Court of Claims again denied UE's motion to intervene in the third case. UE then filed an application for leave to appeal that decision in May 2017. After the appeal was filed, the Court of Claims issued another opinion and order holding that "the errand that took Dr. Ostendorf to the accident site was purely personal and in no way related to her employment at MSU" and, alternatively, that Ostendorf "was employed by MSU under the United States J-1 Visa program and as such was not eligible for workers [sic] compensation." We granted leave to appeal, consolidated the appeal from the third case with that in the first case, and ultimately stayed the proceedings pending the outcome of the proceedings before the MCAC.[2]

The MCAC issued its opinion and order on June 6, 2018, noting the lack of factual disputes in the case and adopting in full the magistrate's legal conclusion that Ostendorf "is not considered an employee of Michigan State University covered under the Worker's Disability Compensation Act" because of her employment status. UE filed its application for leave to appeal in this Court on July 5, 2018. This Court granted leave and also consolidated the appeal with those in the other two cases. *Ostendorf v Mich State Univ*, unpublished order of the Court of Appeals, entered September 6, 2018 (Docket No. 344533).

Our Supreme Court has directed this Court to determine whether plaintiffs' claims are barred by the exclusive-remedy provision of the WDCA; and if not, whether the Court of Claims erred by denying UE's motion to intervene.

### III. EXCLUSIVE REMEDY UNDER MCL 418.131(1)

UE argues that the Court of Claims erred for two reasons when it concluded that compensation under the WDCA was not Ostendorf's exclusive remedy for her injuries as provided under MCL 418.131(1). First, UE argues that Ostendorf is not exempted as a foreign national under MCL 418.161(1)(b) of the WDCA. Second, UE argues that Ostendorf's injuries occurred while in the course of her employment, and therefore, workers' compensation is her exclusive remedy.

---

[2] This Court initially denied leave to appeal the Court of Claims decision, but our Supreme Court, in lieu of granting leave, remanded the appeal with instructions to hold the cases in abeyance pending the outcome of the proceedings before the MCAC. *Kuhlgert v Mich State Univ*, 501 Mich 950; 904 NW2d 866 (2018).

## A. FOREIGN NATIONALS EXEMPTION UNDER MCL 418.161(1)(B)

UE first argues that the Court of Claims and the MCAC erred when they concluded that Ostendorf's employment status removed her from coverage under the WDCA by way of MCL 418.161(1)(b)—which exempts "foreign nationals" from the definition of "employee." We disagree.

This Court reviews a trial court's findings of fact for clear error. MCR 2.613(C). Questions of law, including statutory interpretation, are reviewed de novo. See *Thompson v Thompson*, 261 Mich App 353, 358; 683 NW2d 250 (2004).

The MCAC reviews a decision of the Workers' Compensation Board of Magistrates for whether the decision is supported by competent, material, and substantial evidence on the whole record; absent fraud, the MCAC's factual conclusions are conclusive on appeal if supported by competent record evidence. *Omian v Chrysler Group LLC*, 309 Mich App 297, 306; 869 NW2d 625 (2015). A decision of the MCAC is subject to reversal if it is based on erroneous legal reasoning or the wrong legal framework. *Id.* "Although judicial review of a decision by the MCAC is limited, questions of law in a workers' compensation case, including the proper interpretation of a statute, are reviewed de novo." *Arbuckle v Gen Motors LLC*, 499 Mich 521, 531; 885 NW2d 232 (2016).

It is undisputed that MSU, as an employer, generally comes under the protections and requirements of the WDCA. The exclusive-remedy provision under the WDCA requires that "[a]n *employee*" receive compensation as provided under the Act. See MCL 418.301(1) (emphasis added). The WDCA defines "employee" broadly, see MCL 418.161, but in doing so sets forth the following exemption: "Nationals of foreign countries employed pursuant to section 102(a)(1) of the [MECEA], shall not be considered employees under this act." MCL 418.161(1)(b).

It is also undisputed that, as the WDCA magistrate had found, "the Exchange Visitor Program (EVP) is an international exchange program administered by the Department of State to implement the MECEA by means of educational and cultural programs," that "[t]he EVP program is commonly known as the 'J visa program' as participants in the program are issued a 'J' non-immigrant visa for entry into the United States," or that Ostendorf was "in the United States under a 'J-1 visa.'" Instead, UE maintains that Ostendorf was not an exempt employee because MSU, not the State Department, paid her salary.

The WDCA magistrate acknowledged that the MECEA was "subsequently codified in 22 USC Section 2451, et seq." That section was incorporated by reference in MCL 418.161(1)(b), which sets forth the activities authorized under the MECEA, and it is now designated as 22 USC 2452. The latter's Subsection (a) authorizes the Director of the United States Information Agency, in the interests of "strengthen[ing] international cooperative relations, to provide, by grant, contract, or otherwise," for the following:

> (1) educational exchanges, (i) *by financing* studies, research, instruction, and other educational activities—

> (A) of or for American citizens and nationals in foreign countries, and

(B) of or for citizens and nationals of foreign countries in American schools and institutions of learning located in or outside the United States;

and (ii) by financing visits and interchanges between the United States and other countries of students, trainees, teachers, instructors, and professors . . . . [22 USC 2452(a)(1) (emphasis added).

The tribunals below thoroughly analyzed the pertinent statutory and legislative history in concluding that Ostendorf's employment excluded her from WDCA benefits under MCL 418.161(1)(b). We agree that 22 USC 2452(a)(1) is not limited to those educational exchange employees paid directly by the State Department. Instead, by its plain language, the statute also applies to those employees who are indirectly financed by that entity through its EVPs.

UE now argues that "Ostendorf's position was financed by MSU, not the Department of State," and so the MECEA does not apply and her exclusive remedy for recovery is under the WDCA. In doing so, UE characterizes 22 USC 2452(a)(1) as authorizing the State Department "to directly *finance* exchange programs." Thus, UE attempts to bolster its position by inserting the word "directly" before "finance," though the legislation actually refers more generally to mere "financing." In its second brief, UE refrains from speaking of "direct" financing, but nonetheless frames its argument as if the "financing" of an EVP participant necessarily requires that the State Department, not an EVP, pay a participant's compensation for attendant employment. In neither brief does UE acknowledge that the State Department might finance its EVP, including in connection with Ostendorf, by means other than directly paying salaries or stipends. We agree with the MCAC that the language of 22 USC 2452(a)(1) is sufficiently broad to permit the specified authority to allow or encourage another entity or EVP sponsor, "such as a university, to pay, on behalf of the State Department, expenses of the participant, including wages and benefits," and "does not bar the State Department from providing financing through a sponsor or some other benefactor." The MCAC further noted that, in this case, "the sponsor is, by contract with a federal government grant recipient, entitled to seek reimbursement from federal grant funds for compensation and expenses it pays the foreign national."

UE musters legislative history in support of the proposition that 22 USC 2452(a)(1) applies to Fulbright scholars, which is a program "financed by the Department of State." However, UE fails to appreciate that identifying Fulbright scholars as coming under the provision at issue does not itself mean that no EVP participants less directly supported by the State Department might also qualify. The regulations implementing the EVP include that "(a)n exchange visitor may receive compensation from the sponsor or the sponsor's appropriate designee, such as the host organization, when employment activities are part of the exchange visitor's program," 22 CFR 62.16(a), thus indicating that attendant salaries need not be funded directly by the State Department but may in fact be provided by other entities participating in the program.

Also instructive is *ASSE Intern, Inc v Kerry*, 803 F3d 1059 (CA 9, 2015). In that case, the Ninth Circuit recognized that entities other than the State Department itself are eligible to act as sponsors of the EVP. See *id.* at 1064 ("The Department of State administers the EVP, with the assistance of various third-party program sponsors.").

-6-

For these reasons, we hold that the Court of Claims and the MCAC correctly concluded that Ostendorf's employment with MSU was exempted from WDCA coverage under MCL 418.161(1)(b).

## B. COURSE OF EMPLOYMENT

UE also argues that the Court of Claims erred when it concluded that Ostendorf's injuries did not arise out of her course of employment. We disagree.

This Court reviews a trial court's findings of fact for clear error. MCR 2.613(C). Questions of law, including statutory interpretation, are reviewed de novo. See *Thompson*, 261 Mich App at 358. The question whether a tribunal has subject-matter jurisdiction is also reviewed de novo. *Adams v Adams*, 276 Mich App 704, 708-709; 742 NW2d 399 (2007).

Even assuming that Ostendorf is not exempt as a foreign national, the exclusive-remedy provision of the WDCA still does not bar her negligence claim because she was not injured while in the course of her employment. Not in dispute is that, for present purposes, MSU is an employer subject to the provisions of the WDCA. Under MCL 418.131(1), except as concerns intentional torts, "[t]he right to the recovery of benefits as provided in [the WDCA] shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease." By extension, an employee who falls under the exclusive-remedy provision of the WDCA may not recover from his or her employer in tort by way of the employer's excess liability insurer. MCL 418.301(1) specifies that compensation under the WDCA is available to an employee "who receives a personal injury arising out of and in the course of employment by an employer who is subject to this act at the time of the injury . . . ."

> The WDCA substitutes statutory compensation for common-law tort liability founded upon an employer's negligence in failing to maintain a safe working environment. Under the WDCA, employers provide compensation to employees for injuries suffered in the course of employment, regardless of fault. In return for this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer. [*Herbolsheimer v SMS Holding Co*, 239 Mich App 236, 240; 608 NW2d 487 (2000) (quotation marks and citations omitted).]

"Because the Bureau of Worker's Compensation is granted exclusive jurisdiction over the only remedy available as a result of the exclusive remedy provision, . . . a party's assertion of the exclusive remedy provision as a defense to a claim necessarily constitutes a challenge to the trial court's subject-matter jurisdiction over the claim." *Harris v Vernier*, 242 Mich App 306, 312-313; 617 NW2d 764 (2000). A court must respect the limits of its jurisdiction. *Straus v Governor*, 230 Mich App 222, 225; 583 NW2d 520 (1998), aff'd 459 Mich 526 (1999).

Whether the Court of Claims erred when it did not defer to the administrative WDCA proceedings depends on whether Ostendorf's injury occurred while in the course of her employment with MSU.

[A]s a general rule the question whether an injury arose out of and in the course of employment is a question to be resolved in the first instance by the bureau. However, there is an exception where it is obvious that the cause of action is not based on the employer/employee relationship. The question whether plaintiff's injury arose out of and in the course of his employment may be a question of law or one primarily of fact, or a mixed question of law and fact. Thus, where the facts are undisputed, the question is one of law for the courts to decide. [*Zarka v Burger King*, 206 Mich App 409, 411; 522 NW2d 650 (1994) (quotation marks and citations omitted).]

MCL 418.301(3) specially addresses the question of course of employment in connection with a person injured while approaching, or departing from, the workplace. The statute provides:

An employee going to or from his or her work, *while on the premises where the employee's work is to be performed*, and within a reasonable time before and after his or her working hours, is presumed to be in the course of his or her employment. Notwithstanding this presumption, an injury incurred in the pursuit of an activity the major purpose of which is social or recreational is not covered under this act. . . . [Emphasis added.]

As noted above, the Supreme Court's remand order specified *Sewell*, 419 Mich at 62, in which the Court stated that the Bureau of Worker's Disability Compensation "has exclusive jurisdiction to decide whether injuries suffered by an employee were in the course of employment," but that "[t]he courts . . . retain the power to decide the more fundamental issue whether the plaintiff is an employee (or fellow employee) of the defendant." In *Sewell*, the Court held that "the bureau's exclusive jurisdiction is inapplicable 'where it is obvious that the cause of action is not based on the employer-employee relationship.'" *Id.* at 62 n 5. We conclude that, just as the question whether an employer-employee relationship exists is a subset of the broader question whether an injury took place in the course of employment, *id.*, so is the question whether the injury took place "on the premises where the employee's work is to be performed."

In this case, the Court of Claims recited the following facts as not being in dispute:

[Ostendorf] left her place of work, which was the Plant and Biology Laboratories Building and she traversed the campus. She was walking toward a University operated parking lot where she did in fact park her vehicle on a regular basis; that is uncontested. It's also uncontested that she wasn't required to use this lot. She was in the process of traversing the campus when she was struck.

In the course of explaining that it was not obliged to defer to workers' compensation proceedings, the court elaborated as follows:

First, the Court would indicate that we have jurisdiction over the case as pled. Additionally, while we are deprived of subject matter jurisdiction, over Worker's Disability Compensation, this Court finds that . . . we do have jurisdiction to decide a question of law where there are uncontested facts. . . .

-8-

\* \* \*

[T]here is no question, but that [Ostendorf] was an employee of the defendant.

\* \* \*

[Ostendorf], while it may have taken her five or ten minutes, was at least 900 feet or three football fields away from the Plant Biology Laboratory where she actually worked. While the phrase "and for reasonable time after she leaves her work hours" might bring her within the Act, she is clearly not on the premises where the employee's work is performed. Any assertion that she was in pursuit of a recreational activity is irrelevant to this case.

At issue, then, is whether the Court of Claims erred in concluding that, in light of those facts, the evidence could not be interpreted to indicate that Ostendorf was still on her employer's premises when injured.

UE points out that, even though Ostendorf parked some distance from her actual work station, "there was no opportunity for Ostendorf to leave MSU's property on her way to her car," thus recommending a broad view of what constitutes the employer's premises. The large and contiguous nature of MSU's main campus weighs against looking to MSU's premises generally, and instead favors focusing more specifically on Ostendorf's actual workplace within the premises of the Biology Laboratories Building. See *Hills v Blair*, 182 Mich 20, 27; 148 NW 243 (1914) (noting that a worker injured on "a railway stretching endless miles across the country . . . might be on the premises of his owner and yet far removed from where his contract of labor called him").

In *Hills*, the Supreme Court concluded an employee was not in the course of his employment when injured on his employer's premises, but 950 feet from where he discharged his employment duties, and where he had finished his work day and was leaving the workplace by way of a route he had chosen for himself. *Id.* at 29-30. Although *Hills* predates the effective date of MCL 418.301(3), the latter's specification of not just the employer's "premises," but rather of "the premises where the employee's work is to be performed," comports with *Hills* in distinguishing locations on the employer's premises in the vicinity of the actual place of employment from those that are far removed from it.

For these reasons, the Court of Claims correctly concluded that Ostendorf, having finished her work and walked approximately 900 feet from her worksite to where she had chosen to park, was thereby removed from her employer's premises, and thus outside the inclusive provision of MCL 418.301(3). The Court of Claims therefore correctly recognized that there was no need to consider whether Ostendorf intended to go straight home, as opposed to some social or recreational activity, and thus that it was not necessary to address UE's theory that

Ostendorf's immediate plan was to walk a friend's dog.[3] The exception for social or recreational activity within MCL 418.301(3) concerns not what an employee departing the workplace premises intends to do next, but rather recognizes that employees sometimes choose to use their workplaces outside of working hours for their own social or recreational purposes. Therefore, the purpose of the exception is to distinguish such purely personal activity from activity in the service of the employer. See *Buitendorp v Swiss Valley, Inc*, 485 Mich 879, 879-880 (2009) (the inquiry over whether the statutory "social or recreational bar applies" concerns not whether the injured person's "*overall* activities were work-related," but rather the injured person's "activity *at the time of injury*").

For these reasons, the Court of Claims did not err in its conclusion that Ostendorf was removed from her employer's premises at the time she was injured.

## IV. MOTION TO INTERVENE

Finally, UE argues that the Court of Claims erred when it denied UE's motions to intervene. We disagree.

We note that, as it concerns the issues addressed previously, UE's intervention claim is moot as it concerns the exclusive-remedy issues because UE has had the opportunity to litigate those issues on appeal. However, our Supreme Court's remand order directed this Court, if we conclude that the Court of Claims action is not barred by the exclusive-remedy provision of the WDCA, to consider whether the Court of Claims erred by denying UE's motion to intervene. Therefore, we will follow our Supreme Court's directive, recognizing that UE may wish to advocate other issues if the litigation in the Court of Claims continues.

"This Court reviews a trial court's decision on a motion to intervene for abuse of discretion." *Auto-Owners Ins Co v Keizer-Morris, Inc*, 284 Mich App 610, 612; 773 NW2d 267 (2009). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Radeljak v DaimlerChrysler Corp*, 475 Mich 598, 603; 719 NW2d 40 (2006).

Intervention is governed by MCR 2.209. MCR 2.209(A) provides:

**Intervention of Right.** On timely application a person has a right to intervene in an action:

(1) when a Michigan statute or court rule confers an unconditional right to intervene;

(2) by stipulation of all the parties; or

---

[3] Although the Court of Claims did not make any such factual finding, the parties appear prepared to agree that, as plaintiff put it, "Ostendorf left work early so that she could '*babysit*' a friend's dog."

(3) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties. [MCR 2.209(A)(1) to (A)(3).]

As for permissive intervention, MCR 2.209(B) states:

> **Permissive Intervention.** On timely application a person may intervene in an action
>
> (1) when a Michigan statute or court rule confers a conditional right to intervene; or
>
> (2) when an applicant's claim or defense and the main action have a question of law or fact in common.
>
> In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties. [MCR 2.209(B)(1) and (B)(2).]

Thus, under Subsection (A)(3), a person may intervene in an action by right on timely application where that person asserts an interest in the subject of the action "and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect the interest, unless the applicant's interest is adequately represented by existing parties." Importantly, under Subsection (B), a court deciding a request for permissive intervention must "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Hill v LF Transport, Inc*, 277 Mich App 500; 746 NW2d 118 (2008).

In this case, the Court of Claims found that, although UE had knowledge of the complaint from the outset of the proceedings, UE waited more than a year to request to intervene. Not only did the court conclude that UE's motion to intervene was untimely, but because there was nothing to suggest that MSU had exercised bad faith or failed to adequately represent UE's interests and to assert all affirmative defenses, the court concluded that UE had not shown that intervention was necessary to ensure its interests were adequately represented or that intervention would not delay or prejudice the adjudication of the rights of the original parties. UE does not take issue with the Court of Claims's concern that granting its motion to intervene would occasion substantial delay in a case that had otherwise progressed to the eve of facilitation or trial, except by implying that its imperatives for intervention justify the delay. In trying to make the case regarding those imperatives, UE challenges the trial court's conclusions concerning timeliness as it relates to the extent to which UE's interests were impeded by implying that its imperatives for intervention justify the delay. We disagree.

## A. UNTIMELINESS

MCR 2.209(A)(3) and (B) both condition intervention on timely application. At oral argument below, UE's attorney admitted that "we're coming in late into the lawsuit," but

suggested that this should not weigh against intervention because "we're raising a subject matter jurisdiction issue and you're never too late to raise . . . subject matter jurisdiction." Similarly, in this case, UE admits that it brought its motion "more than one year after the complaint was filed," but argues that the position it wished to advocate below was one challenging the jurisdiction of the Court of Claims to hear the case. In so doing, UE relies on the familiar rule that challenges to subject-matter jurisdiction may be raised at any time. See *Adams*, 276 Mich App at 708-709. UE claims that it is not alleging an alternative theory of causation, but rather is "seeking to intervene to implement a procedure that must occur in this tort action." However, UE cites no authority for its proposition that the criteria for determining whether a party or entity may intervene in civil litigation are viewed more favorably when the prospective intervenor challenges jurisdiction. Although parties have no time constraints when challenging subject-matter jurisdiction, procedurally a nonparty wishing to do so must first be a party to the action in the normal course.

UE also acknowledges that MSU pleaded the WDCA among its affirmative defenses, but asserts that "MSU didn't inform UE until much later that it wasn't pursing the exclusive-remedy defense." UE insists that MSU lacked an incentive in the matter because, while MSU would have to fund any remedy under the WDCA, it could pass such costs on to its insurers in the event of liability in tort. However, in light of UE's admission that it knew of the litigation from its inception, and its contractual right to participate in any attendant defense, UE was, at the very least, on inquiry notice concerning the WDCA defense from the time the complaint was filed. Therefore, UE could have timely filed its motion to intervene.

## B. REPRESENTATION OF INTERVENOR'S INTEREST

MCR 2.209(A)(3) allows intervention by right when an applicant's interests are not adequately represented by an existing party. In arguing that there was "clearly not" another party advancing UE's interests, counsel for UE argued below as follows:

> [T]he irony . . . is that you have plaintiffs saying this is MSU's issue. MSU will stand up for this issue and take a position; and then you have MSU saying we're not taking a position. . . . MSU is standing on the sidelines. Plaintiff clearly is opposed to our position. We are the only party speaking on behalf of this being a Worker's Comp claim.

MSU raised the workers' compensation exclusive-remedy provision in its affirmative defenses, but it did not pursue the defense beyond the pleading stage. Significantly, despite UE's protestations over MSU's incentives in the matter, UE has stopped short of challenging as clearly erroneous the Court of Claims's finding that "[n]o one is asserting that Michigan State University has exercised bad faith."[4] In light of this restraint on UE's part, we presume good

---

[4] We note that MSU may not have ultimately pursued the affirmative defense under the WDCA because it believed that the defense would not be successful, even though a workers' compensation award would eliminate the possibility of tort liability. Of course, MSU also may not have pursued the defense because MSU was self-insured through State Farm and UE.

faith on MSU's part and will not speculate as to why it abandoned the WDCA defense. Moreover, in light of our holding on the exclusive-remedy issue, in which UE has participated fully, we conclude that UE's intervention argument is meritless.

Further, relating to both the issue of MSU's having represented UE's interests for purposes of intervention by right, and that of a common defense for purposes of permissive intervention, is that the only interest that UE has put forward for this purpose is its obligation to indemnify MSU to the extent that the latter ends up obliged to cover tort damages in excess of its other sources of coverage. But a potential duty to indemnify a claimant for benefits is "separate and distinct" from the underlying claim for benefits, which does not itself justify the potential indemnitor's intervention in litigation regarding that claim. See *Black v Dep't of Social Servs*, 212 Mich App 203, 205-206; 537 NW2d 456 (1995). Because UE does not assert subrogation rights in the matter, or any other contractual rights in connection with MSU beyond the latter's admitted duty of cooperation, UE's interest in this case relates directly to that cooperation, not to the possible competing theories of recovery or remedy. Ultimately, if MSU files a claim against its policy with UE for excess coverage for tort liability, and UE remains persuaded that MSU did not conscientiously defend itself or otherwise cooperate with UE in the matter, then UE may defend the claim on such contractual bases.

For these reasons, UE fails to show with its arguments relating to jurisdiction, or the extent to which MSU represented its interests in the litigation below, that the Court of Claims erred by denying its motion for intervention as untimely, either by right or permissively.

Affirmed.


/s/ Thomas C. Cameron
/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh