*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SHAUNTIQUE BROWN, Personal Representative
of the ESTATE OF LORRAINE FAISON,

        Plaintiff-Appellant,

v

BURLINGTON COAT FACTORY OF TEXAS,
INC., and BURLINGTON COAT FACTORY
WAREHOUSE CORPORATION d/b/a
BURLINGTON COAT FACTORY,

        Defendants-Appellees.

UNPUBLISHED
July 11, 2025
10:12 AM

No. 370363
Wayne Circuit Court
LC No. 20-011978-NO

Before: MALDONADO, P.J., and BOONSTRA and WALLACE, JJ.

PER CURIAM.

This case, involving allegations of wrongful death, returns to this Court for the second time on an appeal of right claimed by plaintiff Shauntique Brown, personal representative of the estate of Lorraine Faison. Plaintiff's decedent was shot and killed by a coworker, while working at defendants' store, in October 2017. Plaintiff brought suit against defendants, and the trial court granted defendants' renewed motion for summary disposition pursuant to MCR 2.118(C)(8). On appeal, plaintiff argues that the trial court erred when it held that she failed to state a claim under the intentional tort exception to the exclusive remedy provision of the Worker's Disability Compensation Act of 1969 (WDCA). We affirm.

## I. FACTS AND PROCEDURAL HISTORY

In this Court's prior opinion, we described the facts alleged by plaintiff in her initial complaint as follows:

> Plaintiff initiated this action alleging that defendants were liable for the shooting death of decedent Lorraine Faison, who was employed at a Burlington Coat Factory store and was shot at work by her coworker, Sandra Waller. Plaintiff alleged in her complaint that, on October 15, 2017, Waller and decedent "began to argue about the proper way to scan the aisles" of defendants' store. The argument escalated,

-1-

and decedent alerted the assistant store manager, Nicole Good. Waller told Good that, about three months ago, she and decedent had a similar argument. Good instructed Waller to return to work but to move to another department away from decedent. But after Waller had returned to work, Waller "continued yelling at and engaging in otherwise belligerent behavior with [decedent]." In response to this, Good told Waller and decedent to go home for the day. "Good remained with [decedent] while Waller went to the back of [defendants'] store to punch out, intending to keep the two women separated and prevent further escalation of the altercation."

Plaintiff alleged that defendants scheduled decedent and Waller to work another shift together the following day, on October 16, 2017. During that shift, Waller resumed the argument from the day before. At some point, Waller pulled out a handgun and shot and killed decedent. [*Brown v Burlington Coat Factory of Texas, Inc,* unpublished per curiam opinion of the Court of Appeals, issued September 22, 2022 (Docket No. 357119)].

Plaintiff subsequently sued defendants for damages under Michigan's wrongful death act, MCL 600.2922, alleging that the WDCA's exclusive remedy provision did not apply to her case because defendants were liable for an intentional tort under MCL 418.131. In her complaint, plaintiff alleged that defendants deliberately scheduled decedent to work with Waller the day following the argument intending for Waller to injure plaintiff. In support of that assertion, plaintiff alleged that defendants "possessed actual knowledge that the workplace environment created by Waller was extremely dangerous such that injury was certain to occur to one or more of its employees, especially decedent." Plaintiff also alleged that defendants willfully disregarded this certain danger by requiring decedent to work with Waller anyway. Rather than file an answer to the complaint, defendants moved the trial court for summary disposition under MCR 2.116(C)(8) on the basis that plaintiff had failed to state a claim on which relief could be granted for an intentional tort under the WDCA. Plaintiff responded by arguing that she had sufficiently pleaded a claim for an intentional tort under the WDCA, but that she should be permitted to file an amended complaint if the court found that she had failed to state a claim.

After the hearing on defendants' motion, the trial court granted summary disposition and dismissed the case, agreeing with defendants that plaintiff failed to sufficiently allege facts to support a claim under the WDCA's intentional tort exception to its exclusive remedy provision. Plaintiff then filed a claim of appeal.

This Court reviewed plaintiff's complaint and noted that, accepted as true and construed in a light most favorable to her, the facts alleged established that defendants acted deliberately—defendants required decedent to work with Waller the day after her and Waller's argument—and no party contended that defendants' doing so was an unintentional act. *Brown*, unpub op at 3. Thus, we determined that the remaining issue was whether defendants required decedent to work with Waller with the specific intent to injure decedent. *Id*. But even when viewed in the light most favorable to plaintiff, we found that the facts pleaded by plaintiff were insufficient to establish that defendants had actual knowledge that Waller would injure decedent. *Id*. Reading the complaint as a whole, we held that the trial court correctly concluded that plaintiff failed to state a

claim for an intentional tort under the WDCA.[1]  *Id*. at 5.  The trial court did not explicitly rule on plaintiff's request for leave to file an amended complaint, but the transcript of the hearing suggested that the court determined that granting such leave would be futile.  On appeal, we held that the trial court erred in denying plaintiff's request to amend her complaint on the basis of futility.  Therefore, while we affirmed the trial court's order for summary disposition, we remanded to allow plaintiff an opportunity to file a motion for leave to amend her complaint.  *Brown*, unpub op at 6.

On remand, plaintiff filed a motion for leave to amend her complaint.  Following a hearing, the trial court granted plaintiff's motion and plaintiff filed her first amended complaint.  Roughly nine paragraphs in the amended complaint contained new allegations.  First, plaintiff alleged that, the day before the shooting, decedent told Good that, during her conversation with Waller about scanning the aisles, Waller yelled at decedent, swearing.  "It continued for a few moments and then [Faison] said she walked up to her and said 'pop if you want to I'm not afraid of you.' " (Brackets original).  Second, plaintiff alleged that Faison told Good that Waller told her that "they didn't have to wait until they got off work, they could go outside now."  Third, plaintiff alleged that, on the day prior to the shooting, Good had been worried about decedent after the altercation and walked with her to clock out, to make sure nothing happened.  Fourth, plaintiff alleged that Waller was criminally prosecuted for the death of decedent and that, at Waller's preliminary examination, Good said that the day before the shooting, "in order to prevent any further altercations, I kept them [Waller and decedent] separated until they were out of the building." (Brackets original).  Fifth, plaintiff alleged that Good testified that defendants had a policy that associates were not allowed to bring firearms into the workplace.  Sixth, plaintiff alleged that Good confirmed that "there's nothing that's done in terms of an employee . . . in terms of them coming into the store to see whether or not they have anything on their persons," that on the day of the shooting Good did not check Waller to see if she had a gun, that Good likewise never checked Waller to see if she had a gun (i.e., at any other time), and Good never asked Waller whether she had a license to carry a concealed weapon.  Seventh, plaintiff alleged that Waller obtained a concealed pistol license (CPL) almost two years before the shooting and her license was still active on the day of the shooting.  Eighth, plaintiff alleged that, in binding Waller over to the circuit court for first-degree murder from her preliminary examination, the presiding judge made statements on the record suggesting that decedent and Waller had issues, and that Waller came back to work knowing that she still had a dispute with decedent, after they had been sent home the day before.  Ninth, plaintiff alleged that Good was aware of a similar argument between Waller and decedent three months before the shooting.

---

[1] Judge Borrello issued a partial concurrence/dissent in which he asserted that, under MCR 2.116(C)(8), plaintiff satisfied the requirements of notice pleading for sufficiently stating a claim on which relief may be granted, and would, as a result, vacate the trial court's order and remand. *Brown* (BORRELLO, J., partially concurring/dissenting), unpub op at 5-6.  Although Judge Borrello believed it was unnecessary to reach the issue of whether plaintiff should be allowed to amend her complaint, he concurred with the majority's opinion to allow her to amend her complaint. *Id*. at 6.

In lieu of answering the complaint, defendants filed another motion for summary disposition under MCR 2.116(C)(8) alleging that plaintiff's amended complaint still failed to state a claim. Following a hearing, the trial court again entered an order granting defendants' motion under MCR 2.116(C)(8) for the reasons it stated on the record. The court essentially stated that the facts pleaded by plaintiff, taken as true, were not sufficient state a claim under the WDCA's intentional tort exception because she failed to allege facts showing that an injury was certain to occur.

This appeal followed.

## II. STANDARD OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the *legal sufficiency* of a claim based on the factual allegations in the complaint." *Id*. (emphasis original). When deciding a motion under MCR 2.116(C)(8), the motion must be decided on the basis of the pleadings alone. *Bailey v Schaaf*, 494 Mich 595, 603; 835 NW2d 413 (2013). "[T]he court must accept as true all factual allegations contained in the complaint." *Id*. "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil*, 504 Mich at 160.

In Michigan, workers compensation is an employee's exclusive remedy against their employer for all on-the-job injuries, except for injuries intentionally inflicted by the employer. *Gray v Morley*, 460 Mich 738, 741; 596 NW2d 922 (1999). Whether the facts alleged by plaintiff are sufficient to meet to the intentional tort exception to the exclusive remedy provision of the WDCA presents a question of law for the court, and whether the facts are as plaintiff alleges presents a jury question. *Gray v Morley*, 460 Mich 738, 742-743; 596 NW2d 922 (1999).

## III. ANALYSIS

Under Michigan's version of workers' compensation, as codified by the WDCA, employers provide compensation to employees for injuries suffered in the course of employment, regardless of fault. *Herbolsheimer v SMS Holding Co, Inc*, 239 Mich App 236, 240; 608 NW2d 487 (2000). "In return for this almost automatic liability, employees are limited in the amount of compensation they may collect from their employer, and, except in limited circumstances, may not bring a tort action against the employer." *Id*. (citation omitted). This rule, the exclusive remedy provision of the WDCA, and one of the exceptions to that rule, i.e., the intentional tort exception, is contained in MCL 418.131(1), which states:

> The right to the recovery of benefits as provided in this act shall be the employee's exclusive remedy against the employer for a personal injury or occupational disease. The only exception to this exclusive remedy is an intentional tort. An intentional tort shall exist only when an employee is injured as a result of a deliberate act of the employer and the employer specifically intended an injury. An employer shall be deemed to have intended to injure if the employer had actual knowledge that an injury was certain to occur and willfully disregarded that

knowledge. The issue of whether an act was an intentional tort shall be a question of law for the court. This subsection shall not enlarge or reduce rights under law.[2]

Thus, "to state a claim against an employer for an intentional tort, the employer must deliberately act or fail to act with the purpose of inflicting an injury upon the employee." *Travis v Dreis & Krump Mfg Co*, 453 Mich 149, 172; 551 NW23 132 (1996). When the employer is a corporate entity, a particular employee must possess the requisite state of mind in order to prove an intentional tort. *Id*. at 171-172. See also *Johnson v Detroit Edison Co*, 288 Mich App 688, 697; 795 NW2d 161 (2010) (regarding a corporate employer, a plaintiff need only show that a supervisory or managerial employee had actual knowledge an injury would follow from what the employer deliberately did or did not do). "[I]ntent to commit tortious acts cannot be imputed to a corporation on the basis of disconnected facts possessed by various employees or agents of that corporation, where there is no evidence that any employee possessed the requisite state of mind." *Adams v National Bank of Detroit*, 444 Mich 329, 368-369; 508 NW2d 464 (1993) (plurality decision, opinion by BRICKLEY, J.). We have previously noted that in order to prove that an employer had knowledge that an injury was certain to occur, an employee does not have to prove that an injury will occur on a certain date, or to a particular employee, or in a specific way. *Johnson*, 288 Mich App at 699.

Again, in our prior opinion in this case, we found that, "accepted as true and construed in a light most favorable to plaintiff, the facts in plaintiff's complaint show that defendants' acted deliberately," because plaintiff "alleged that defendants required decedent to work with Waller the day after decedent's and Waller's argument, and neither party contends that defendants' doing so was an unintentional act." *Brown*, unpub op at 3. We make the same finding here because the first amended complaint, as it pertains to this issue of whether defendants acted deliberately, makes the same allegations as the original complaint. So, once again, the remaining issue is whether defendants required decedent to work with Waller with the specific purpose of inflicting an injury on decedent.

## A. PLEADING AN INTENTIONAL TORT UNDER THE WDCA

Plaintiff first argues that the elements of the intentional tort exception to the exclusive remedy provision of the WDCA were established in her first amended complaint. We disagree. When viewed in the light most favorable to plaintiff, accepting all of the allegations contained in the first amended complaint as true, we find that plaintiff has failed to state a claim under MCL 418.131(1).

"An injury is certain to occur if there is no doubt that it will occur, and an employer is deemed to have possessed the requisite state of mind when it disregards actual knowledge an injury is certain to occur." *Herman v Detroit*, 261 Mich App 141, 148; 680 NW2d 71 (2004).

In our prior opinion, reviewing the original complaint, we emphasized that "there was no allegation that either of decedent's and Waller's arguments ever resulted in physical harm to either

---

[2] We note that, where the injury is due to a third party's negligence, a plaintiff can collect workers compensation and bring an action against the third party. *Herbolsheimer*, 239 Mich App at 241.

party, that Waller ever threatened to physically harm decedent, that Waller had violent tendencies of which Good was aware, or that Waller had access to any sort of weapon." *Brown*, unpub op at 6. "Simply put, plaintiff alleged no facts showing that Waller was dangerous or posed a physical threat to decedent." *Id*.

While plaintiff's first amended complaint does add allegations that Waller had access to a gun, those allegations do not suggest that defendants knew that she had access to a gun. In the first amended complaint, plaintiff alleges that Waller had a CPL on the date of the shooting, that she obtained that license approximately two years earlier, that defendants had a policy of not allowing employee to bring guns to the workplace, that defendants did not check employees for guns when employees entered the building, and defendants' assistant manager (Good) had never checked to see if Waller had a gun.

As this court has previously noted in the context of a claim for an intentional tort under the WDCA, evidence of gun ownership by an employee, standing alone, does not prove that the employer knew the employee was dangerous. *LaDuke v Ziebart Corp*, 211 Mich App 169, 173; 535 NW2d 201 (1995).

Considered as a whole, and in combination with the other allegations contained in the amended complaint, these allegations sound in negligence; they do not satisfy the elements of the intentional tort exception to the WDCA. It is well settled in Michigan that the gravamen of an action (i.e., the material part of the complaint) is determined by reading the complaint as a whole, and by looking beyond labels to determine the exact nature of the claim. See *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). The crux of defendants' allegations are that Waller had a gun, and that if defendants had properly acted on their policy of not allowing employees to bring a gun into the building, they would have searched Waller before she entered that day, found that she had the gun, and prevented the shooting of decedent. Further, defendants knew that an argument had occurred between decedent and Waller three months before the shooting, as well as the day before the shooting, with the latter incident resulting in Good walking decedent to her car to ensure that "nothing happened." Finally, defendants knew that Waller had suggested to decedent that they settle the dispute outside. These allegations do not establish that defendants had no doubt that an injury was certain to occur, as required by *Herman*, 261 Mich App at 148; rather, they are allegations that defendants did not act reasonably. But the exclusive remedy for an injury caused by the negligence of an employer in Michigan is provided by the WDCA. See MCL 418.131.

In her brief, plaintiff relies upon *Johnson*, noting that the dispositive motion in that case was decided under MCR 2.116(C)(10), not (C)(8), i.e., unlike plaintiff in the present case, the plaintiff in *Johnson* was permitted to conduct discovery. However, *Johnson* is not only distinguishable from the present case, it illustrates the extremely high burden that plaintiffs have to meet in order to present a claim under the intentional tort exception to the WDCA. In *Johnson*, plaintiffs were employed as power plant operators by the defendants. *Johnson*, 288 Mich App at 690. They were required, typically once a day, to dump bottom ash from four industrial furnaces or boilers. *Id*. With regard to Boiler 19, due to multiple ash gates being broken for several months to a year, and due to some of its door seams being corroded so that they could not be closed all the way, ash would build up behind the improperly operating gates, which would then tumble over to the gates that operated properly and build up there as well. *Id*. at 691 This buildup would cause

an explosion of ash through any opening, including the defective boiler doors, which would be forced open, causing employees to regularly suffer burns because of the mist of hot-ash spew that would cover them as they operated the boilers. *Id*. As a result, operators regularly ran from the boilers to avoid getting burned. One of the plaintiffs had previously suffered a burn injury from operating a broken boiler, one of their coworkers had to be hospitalized for a burn injury from Boiler 19, and employees had expressed concerns about the broken ash gates to management on numerous occasions. *Id*. at 691-692. Further, employees showed management the safety problems in the ash-dumping process, which danger was acknowledged by management, who explained to workers that there was no money to fix the problem. *Id*. at 692. In that case, we held that, "if the plaintiff can show that the plaintiff's employer subjected the plaintiff to a continuously operative dangerous condition that it knew would cause an injury, that the employer knew that its employees were taking insufficient precautions to protect themselves against that inherent danger, and that the employer took no action to remedy the situation, a jury may conclude that the employer knew the injury was certain to occur under MCL 418.131(1)." *Id*. at 704-705.

While the continuously operative dangerous condition situation in *Johnson* may not be the only type of situation that allows an employee to bring an intentional tort exception, it does illustrate the high bar created by the statute. The allegations in *Johnson* were that the managers of the corporate defendant knew that injuries were repeatedly occurring as a result of the broken boiler, and were certain to occur again if they continued to operate the broken boiler, yet they operated it anyway because they lacked the funds to fix it, resulting in workers suffering the same types of inevitable injuries. Taken as a whole, the allegations in plaintiff's first amended complaint in the present case are not comparable to the allegations in *Johnson*. First, there is no allegation of a prior injury, instead there are merely allegations of prior arguments. Second, there is no allegation that Good or any of defendants' other managers were warned that Waller would injure someone. Instead, the allegations are that Waller owned a gun, a fact that is not alleged to have been known by Good or any of defendants' other managers, that Waller told decedent that "they didn't have to wait until they got off they could go outside now," and that Good made sure that Waller and decent were separated for the rest of the day in order to prevent any further altercations. Unlike *Johnson*, where management had *no doubt* that *injuries* were going to occur prior to the plaintiffs being burned, the allegations in the present case suggest that defendants' manager was concerned about an *altercation* that *might* occur between decedent and Waller the day before the shooting at issue.

As we said in our prior opinion, while the allegations could suggest that Good was apprehensive about decedent's safety, "even if this fact were enough to show that Good actually knew Waller would injure decedent, plaintiff's complaint is deficient for another reason: it fails to allege facts showing that the injury was *certain* to occur." *Brown*, unpub op at 4 (emphasis original). Demonstrating "an employer's awareness that a dangerous condition exist[ed]," or that an employer knew an accident was likely, is not enough to make this showing. *Johnson*, 288 Mich App at 697-698 (brackets original, citations omitted). The new allegations contained in the amended complaint, read in concert with the rest of the allegations, continue to fail to show that the injury was *certain* to occur.

Plaintiff also argues she should be allowed to conduct discovery in this case because, without Waller's personnel file, which could only be obtained through discovery, she does not know whether Waller and Faison engaged in other arguments or if Waller engaged in similar

behavior with other employees. We are not persuaded by this argument. Again, other arguments between Waller and decedent, or between Waller and other employees, would not show that injury to an employee was *certain* to occur.

## B. LEAVE TO FILE SECOND AMENDED COMPLAINT

Plaintiff's second argument on appeal is that the trial court erred by not allowing plaintiff to file a second amended complaint. We disagree.

We review a trial court's decision regarding amendment of a complaint under MCR 2.116(I)(5) for an abuse of discretion. *Liggett Restaurant Group, Inc v Pontiac*, 260 Mich App 127, 138; 676 NW2d 633 (2003).

In her brief in support of her response to defendants' renewed motion to summary disposition, plaintiff raised this issue by simply citing the applicable court rule and without providing any analysis as to why the court should grant leave to file yet another amended complaint. At the hearing on the renewed motion for summary disposition, plaintiff never raised the issue of filing a second amended complaint. On the record, the trial court did not explicitly state why it did not grant leave to file a second amended complaint but, similar to the hearing on defendants' initial motion for summary disposition, the trial court appeared to believe any further amendment would be futile.

In support of her argument on appeal, plaintiff relies upon this Court's unpublished decision in *Global Prod v Mayser Polymer USA, Inc*, unpublished per curiam opinion of the Court of Appeals, issued February 14, 2019 (Docket No. 339451), where we found the trial court erred when it denied the plaintiff's request to amend a complaint pursuant to MCR 2.116(I)(5) after dismissing the plaintiff's claims under MCR 2.116(C)(8). Plaintiff's reliance upon *Global Products* is misplaced. First, we note that MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis. Second, while, a court may nonetheless consider such opinions for their instructive or persuasive value,[3] we find that *Global Products* is not instructive here. In *Global Products*, the trial court refused to even entertain the plaintiff's request to amend the breach of contract count in its complaint, despite MCR 2.116(I)(5)'s directive that parties subject to a dismissal pursuant MCR 2.116(C)(8) shall be given an opportunity to amend their pleadings unless the evidence before the court shows that amendment would not be justified. Here, plaintiff was already given an opportunity by the trial court to amend her pleadings, which resulted in the filing of her first amended complaint. We find that the trial court did not abuse its discretion when it failed to grant plaintiff's request for leave to file a second amended complaint

---

[3] *Kennard v Liberty Mut Ins Co*, 341 Mich App 47, 53 n 2; 988 NW2d 797 (2022).

because (1) the trial court allowed plaintiff to file an amended complaint and (2) the evidence before the court shows that yet another amendment would not be justified in this matter.

Affirmed.

/s/ Allie Greenleaf Maldonado
/s/ Mark T. Boonstra
/s/ Randy J. Wallace